## UNITED STATES BANKRUPTCY COURT FOR
## THE WESTERN DISTRICT OF WISCONSIN

In Re:                                      In Bankruptcy No:

**STEVEN T. RAPRAEGER**
**and KATHLEEN J. RAPRAEGER**

       Debtors/Debtor in Possession     Case No:  13-10869(CJF)

## MOTION TO SELL CERTAIN REAL ESTATE FREE AND CLEAR OF ALL LIENS PURSUANT TO BANKRUPTCY CODE SECTION 363 WITH THE PROCEEDS ATTACHING TO THE LIENS IN THE ORDER OF PRIORITY ON THE PROPERTY

Steven T. Rapraeger and Kathleen J. Rapraeger his wife, debtors/debtor in possession by their attorneys PITTMAN & PITTMAN LAW OFFICES, LLC by Galen Pittman hereby move the Court for an Order to sell certain real estate identified in the attached enclosures. The sale of the real estate as set forth in the agreement to be sold free and clear of all liens with the liens attaching to the proceeds in the order of priority. Enclosed is as follows:

1.     Offer to Purchase (Exhibit #1).

2.     Real estate description (Exhibit #2).

3.     Title Policy (Exhibit #3).

4.     Mortgages, judgment liens, contracts, tax liens, construction liens, debts and a variety of other liens against the property (Exhibit #4).

The proceeds from the sale will be used in the following order:

1.     Closing costs relating to the sale of property, including title policy, transfer fees, recording fees, commissions, attorneys' fees for Galen W. Pittman (not to exceed $1,500.00) relating to the sale of property and other miscellaneous closing costs.

2. Payment of all delinquent real estate taxes on the property accrued, delinquent or otherwise.

3. Any other proceeds shall be distributed to pay off the first lien holder mortgage on the property. Any proceeds above and beyond that shall be placed into the Galen W. Pittman Trust Account.

Dated this __30__ day of January, 2015 at La Crosse, Wisconsin.

PITTMAN & PITTMAN LAW OFFICES, LLC

By: __s/Galen W. Pittman__
       **Galen W. Pittman**
       **Attorney for Debtors**
       **Attorney No: 1010058**
       **300 North 2nd St., Ste. 210**
       **Post Office Box 668**
       **La Crosse, WI 54602-0668**
       **(608) 784-0841**

Approved by the Wisconsin Department of Regulation and Licensing
11-1-09 (Optional Use Date)   3-1-10 (Mandatory Use Date)

Castle Realty, LLC

## WB-40 AMENDMENT TO OFFER TO PURCHASE

**Caution: Use A WB-40 Amendment If Both Parties Will Be Agreeing To Modify The Terms Of The Offer.
Use A WB-41 Notice If A Party Is Giving A Notice Which Does Not Require The Other Party's Agreement.**

1  Buyer and Seller agree to amend the Offer dated _____December 15_____ , _**2014**_ , and accepted _____December 23_____ , _2014_ , for
2  the purchase and sale of real estate at 120 E Clyde St, Holmen WI 54636
3  _____

4  ☐ Closing date is changed from _____ as follows:
5  ☐ Purchase price is changed from $ _____ , _____ , to _____ , _____ .
6  ☐ Occupancy date is changed from _____ to $ _____ , _____ .
7  ☐ Occupancy charge is changed from $ _____ , _____ , to _____ , _____ .
8  ☒ Other: Home inspection contingency is no longer part of offer to purchase, contingency
9  has been satisfied. _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 ALL OTHER TERMS OF THE OFFER TO PURCHASE AND ANY PRIOR AMENDMENTS REMAIN THE SAME.
24 This Amendment is binding upon Seller and Buyer only if a copy of the accepted Amendment is delivered to the
25 Party offering the Amendment on or before _____January 15, 2015_____ (Time is of the Essence).
26 Delivery of the accepted Amendment may be made in any manner specified in the Offer to Purchase, unless
27 otherwise provided in this Amendment.
28 **NOTE: The Party offering this Amendment may withdraw the offered Amendment prior to acceptance and**
29 delivery as provided at lines 24-27.

30 This Amendment was drafted by _____Terry Schmidt, Castle Realty, LLC_____ on 01/08/2015
31                                                   Licensee and Firm ▲                                      Date ▲

32 This Amendment was delivered by _____Terry Schmidt, Castle Realty, LLC_____ on 01/08/2015
33                                                   Licensee and Firm ▲                                      Date ▲

34 This Amendment was presented by _John Sheppard RE/MAX First Choice_ on 1/9/15
35                                                   Licensee and Firm ▲                                      Date ▲

36 (x) _____
37 Buyer's Signature ▲                 01/08/2015
38 Print name ▶ Edward J O'Brien        Date ▲

      (x) _____   1-9-15
      Seller's Signature ▲                        Date ▲
      Print name ▶

39 (x) _____
40 Buyer's Signature ▲                 01/08/2015
41 Print name ▶ Kelly Isensee          Date ▲

      (x) _Cathleen Rapuano_   1-9-15
      Seller's Signature ▲              Date ▲
      Print name ▶

42 This Amendment was rejected by _____ on _____
43                                  Party Name ▲                              Date ▲

Castle Realty, LLC, 1004 Starlite Dr Holmen, WI 54636
Terry Schmidt

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com          Phone: (608)780-4820      Fax: (608)782-2535          Isensee/Obrien

#1

Approved by the Wisconsin Department of Regulation and Licensing
11-1-09 (Optional Use Date)   3-1-10 (Mandatory Use Date)

RE/MAX First Choice

## WB-40 AMENDMENT TO OFFER TO PURCHASE

**Caution: Use A WB-40 Amendment If Both Parties Will Be Agreeing To Modify The Terms Of The Offer.
Use A WB-41 Notice If A Party Is Giving A Notice Which Does Not Require The Other Party's Agreement.**

1  Buyer and Seller agree to amend the Offer dated __December 15__ , __2014__ , and accepted __December 23__ , __2014__ , for
2  the purchase and sale of real estate at __120 E Clyde St. Holmen, Wi 54636__
3  _____ as follows:

4  ☐ Closing date is changed from _____ , _____ , to _____ , _____ .
5  ☐ Purchase price is changed from $ _____ to $ _____ , _____ .
6  ☐ Occupancy date is changed from _____ , _____ , to _____ , _____ .
7  ☐ Occupancy charge is changed from $ _____ to $ _____ , _____ .
8  ☒ Other: 1.) Washer & Dryer included in offer to purchase. _____
9  _____

10  2.) Edward J. O'Brien 1747 Rose St. #31, La Crosse, Wi 54603 is to be added to
11  residential offer to purchase and all documents related to the sale.
12  _____

13  3.)Seller to include four window air conditioners.
14  _____

15  4.)Seller to remove chair lift and lower approx. 11 feet of ramp in breezeway.  Seller to
16  add approx. 2 steps at bottom portion of ramp.  Remaining portion of ramp to remain.
17  Work to be done in good workmanlike manor.

18  _____
19  5.) Water softener is a rental and not included in the sale.  Seller to have the unit
20  returned to vendor prior to closing.
21  _____
22  _____

23  ALL OTHER TERMS OF THE OFFER TO PURCHASE AND ANY PRIOR AMENDMENTS REMAIN THE SAME.
24  This Amendment is binding upon Seller and Buyer only if a copy of the accepted Amendment is delivered to the
25  Party offering the Amendment on or before __January 7, 2015__ (Time is of the Essence).
26  Delivery of the accepted Amendment may be made in any manner specified in the Offer to Purchase, unless
27  otherwise provided in this Amendment.
28  **NOTE: The Party offering this Amendment may withdraw the offered Amendment prior to acceptance and**
29  **delivery as provided at lines 24-27.**

30  This Amendment was drafted by _____**JOHN SHEPPARD, RE/MAX FIRST CHOICE**_____ on __01/03/2015__
31  Licensee and Firm ▲                                      Date ▲

32  This Amendment was delivered by _John Sheppard RE/MAX First Choice_ on _1/4/2015_
33  Licensee and Firm ▲                                      Date ▲

34  This Amendment was presented by _____ on _____
35  Licensee and Firm ▲                                      Date ▲

36  _____          _1-5-15_          _____          _1-4-15_
37  Buyer's Signature ▲             Date ▲          Seller's Signature ▲             Date ▲
38  Print name ▶ _Edward J. O'Brien_                Print name ▶

39  _____          _1-5-15_          _____          _____
40  Buyer's Signature ▲             Date ▲          Seller's Signature ▲             Date ▲
41  Print name ▶ _Kelly Isensee_                    Print name ▶

42  This Amendment was rejected by _____ on _____
43  Party Name ▲                                      Date ▲

Approved by Wisconsin Department of Regulation and Licensing.
11-1-09 (Optional Use Date) 3-1-10 (Mandatory Use Date)

## WB-44 COUNTER-OFFER

Counter-Offer No. ___1___ by (Buyer/Seller) STRIKE ONE

1  The Offer to Purchase dated __12|15|14__ and signed by Buyer __Kelly Marie Isensee__,
2  for purchase of real estate at __120 E Clyde St Holmen__
3  is rejected and the following Counter-Offer is hereby made. All terms and conditions remain the same as stated in the
4  Offer to Purchase except the following: [CAUTION: This Counter-Offer does not include the terms or conditions in
5  any other Counter-Offer unless incorporated by reference.]
6
7  ① Purchase price to be $169,900 (one hundred
8
9  sixty nine thousand nine hundred)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30  Any warranties, covenants and representations made in this Counter-Offer survive the closing of this transaction.
31  This Counter-Offer is binding upon Seller and Buyer only if a copy of the accepted Counter-Offer is delivered to the Party
32  making the Counter-Offer on or before __12/26/2014__ (Time is of the
33  Essence).  Delivery of the accepted Counter-Offer may be made in any manner specified in the Offer to Purchase, unless
34  otherwise provided in this Counter-Offer.
35  NOTE: The Party making this Counter-Offer may withdraw the Counter-Offer prior to acceptance and delivery as
36  provided at lines 31 to 34.

37  This Counter-Offer was drafted by __Julie M Sheppard__ RE/MAX First Choice __12/22/14__
38                                                Licensee and Firm ▲                    Date ▲

39  X_____          X__Cathleen Barraud__
40  Signature of Party Making Counter-Offer ▲   Date ▲   Signature of Party Making Counter-Offer ▲   Date ▲
41  Print name ▶                                Print name ▶

42  __Kelly Isensee__        __12-23-14__       _____        __12-23-14__
43  Signature of Party Accepting Counter-Offer ▲  Date ▲  Signature of Party Accepting Counter-Offer ▲  Date ▲
44  Print name ▶                                Print name ▶

45  This Counter-Offer was presented by __Terry Schmidt Castle Realty LLC__ on __12-23-14__
46                                          Licensee and Firm ▲                              Date ▲

47  This Counter-Offer is (rejected) (countered) STRIKE ONE (Party's initials) _____ (Party's initials) _____
48  NOTE: Provisions from a previous Counter-Offer may be included by reproduction of the entire provision or
49  incorporation by reference. Provisions incorporated by reference may be indicated in the subsequent Counter-Offer
50  by specifying the number of the provision or the lines containing the provision. In transactions involving more than
51  one Counter-Offer, the Counter-Offer referred to should be clearly specified.
52  NOTE: Number this Counter-Offer sequentially, e.g. Counter-Offer No. 1 by Seller, Counter-Offer No. 2 by Buyer, etc.

Approved by the Wisconsin Department of Regulation and Licensing
03-1-11 (Optional Use Date)  07-1-11 (Mandatory Use Date)

**Castle Realty, LLC**
Page 1 of 9, WB-11

## WB-11 RESIDENTIAL OFFER TO PURCHASE

1 **LICENSEE DRAFTING THIS OFFER ON** _____December 15, 2014_____ **[DATE] IS (AGENT OF BUYER)**
2 ~~(AGENT OF SELLER/LISTING BROKER) (AGENT OF BUYER AND SELLER)~~ **STRIKE THOSE NOT APPLICABLE**
3 **GENERAL PROVISIONS** The Buyer, Kelly Marie Isensee
4 _____ , offers to purchase the Property known as [Street Address] 120 E Clyde St
5 _____ in the _____ village
6 of _____Holmen_____ , County of _____La Crosse_____ Wisconsin (insert additional
7 description, if any, at lines 165-172 or 435-442 or attach as an addendum per line 434), on the following terms:
8 ■ PURCHASE PRICE: One Hundred Sixty-Three Thousand, Five Hundred
9 _____ Dollars ($ 163,500.00 ).
10 ■ EARNEST MONEY of $ _____ accompanies this Offer and earnest money of $ 500.00
11 will be mailed, or commercially or personally delivered within _____3_____ days of acceptance to listing broker or
12 _____ .
13 ■ THE BALANCE OF PURCHASE PRICE will be paid in cash or equivalent at closing unless otherwise provided below.
14 ■ INCLUDED IN PURCHASE PRICE: Seller is including in the purchase price the Property, all Fixtures on the Property on
15 the date of this Offer not excluded at lines 17-18, and the following additional items: oven,range,regrigerator,
16 window air conditioners(3) .
17 ■ NOT INCLUDED IN PURCHASE PRICE: personal property
18 _____ .
19 **CAUTION: Identify Fixtures that are on the Property (see lines 185-193) to be excluded by Seller or which are rented**
20 **and will continue to be owned by the lessor.**
21 **NOTE: The terms of this Offer, not the listing contract or marketing materials, determine what items are**
22 **included/excluded.**
23 **ACCEPTANCE** Acceptance occurs when all Buyers and Sellers have signed one copy of the Offer, or separate but identical
24 copies of the Offer.
25 **CAUTION: Deadlines in the Offer are commonly calculated from acceptance. Consider whether short term deadlines**
26 **running from acceptance provide adequate time for both binding acceptance and performance.**
27 **BINDING ACCEPTANCE** This Offer is binding upon both Parties only if a copy of the accepted Offer is delivered to Buyer on
28 or before _____12:00 p.m. December 16th (12.5)_____ . Seller may keep the Property on the
29 market and accept secondary offers after binding acceptance of this Offer.
30 **CAUTION: This Offer may be withdrawn prior to delivery of the accepted Offer.**
31 **OPTIONAL PROVISIONS** TERMS OF THIS OFFER THAT ARE PRECEDED BY AN OPEN BOX (☐) ARE PART OF THIS
32 OFFER ONLY IF THE BOX IS MARKED SUCH AS WITH AN "X." THEY ARE NOT PART OF THIS OFFER IF MARKED "N/A"
33 OR ARE LEFT BLANK.
34 **DELIVERY OF DOCUMENTS AND WRITTEN NOTICES** Unless otherwise stated in this Offer, delivery of documents and
35 written notices to a Party shall be effective only when accomplished by one of the methods specified at lines 36-54.
36 (1) Personal Delivery: giving the document or written notice personally to the Party, or the Party's recipient for delivery if
37 named at line 38 or 39.
38 Seller's recipient for delivery (optional): John Shepard, RE/MAX First Choice
39 Buyer's recipient for delivery (optional): Terry Schmidt, Castle Realty, LLC
40 ☐ (2) Fax: fax transmission of the document or written notice to the following telephone number:
41 Seller: (_____) _____ Buyer: (_____) _____
42 ☐ (3) Commercial Delivery: depositing the document or written notice fees prepaid or charged to an account with a
43 commercial delivery service, addressed either to the Party, or to the Party's recipient for delivery if named at line 38 or 39, for
44 delivery to the Party's delivery address at line 47 or 48.
45 ☐ (4) U.S. Mail: depositing the document or written notice postage prepaid in the U.S. Mail, addressed either to the Party,
46 or to the Party's recipient for delivery if named at line 38 or 39, for delivery to the Party's delivery address at line 47 or 48.
47 Delivery address for Seller: _____
48 Delivery address for Buyer: _____
49 ☒ (5) E-Mail: electronically transmitting the document or written notice to the Party's e-mail address, if given below at line
50 53 or 54. If this is a consumer transaction where the property being purchased or the sale proceeds are used primarily for
51 personal, family or household purposes, each consumer providing an e-mail address below has first consented electronically
52 to the use of electronic documents, e-mail delivery and electronic signatures in the transaction, as required by federal law.
53 E-Mail address for Seller (optional): john@danstaceyteam.com
54 E-Mail address for Buyer (optional): terry@onlinecastles.com
55 **PERSONAL DELIVERY/ACTUAL RECEIPT** Personal delivery to, or Actual Receipt by, any named Buyer or Seller
56 constitutes personal delivery to, or Actual Receipt by, all Buyers or Sellers.

57 **OCCUPANCY** Occupancy of the entire Property shall be given to Buyer at time of closing unless otherwise provided in this
58 Offer at lines 165-172 or 435-442 or in an addendum attached per line 434. At time of Buyer's occupancy, Property shall be in
59 broom swept condition and free of all debris and personal property except for personal property belonging to current tenants,
60 or that sold to Buyer or left with Buyer's consent. Occupancy shall be given subject to tenant's rights, if any.

61 **DEFINITIONS**
62 ■ ACTUAL RECEIPT: "Actual Receipt" means that a Party, not the Party's recipient for delivery, if any, has the document or
63 written notice physically in the Party's possession, regardless of the method of delivery.
64 ■ CONDITIONS AFFECTING THE PROPERTY OR TRANSACTION: "Conditions Affecting the Property or Transaction" are
65 defined to include:
66 a. Defects in the roof.
67 b. Defects in the electrical system.
68 c. Defects in part of the plumbing system (including the water heater, water softener and swimming pool) that is included in
69 the sale.
70 d. Defects in the heating and air conditioning system (including the air filters and humidifiers).
71 e. Defects in the well, including unsafe well water.
72 f. Property is served by a joint well.
73 g. Defects in the septic system or other sanitary disposal system.
74 h. Underground or aboveground fuel storage tanks on or previously located on the Property. (If "yes", the owner, by law,
75 may have to register the tanks with the Department of Commerce at P.O. Box 7970, Madison, Wisconsin, 53707, whether
76 the tanks are in use or not. Regulations of the Department of Commerce may require the closure or removal of unused
77 tanks.)
78 i. "LP" tank on the Property (specify in the additional information whether the tank is owned or leased).
79 j. Defects in the basement or foundation (including cracks, seepage and bulges).
80 k. Property is located in a floodplain, wetland or shoreland zoning area.
81 l. Defects in the structure of the Property.
82 m. Defects in mechanical equipment included in the sale either as Fixtures or personal property.
83 n. Boundary or lot line disputes, encroachments or encumbrances (including a joint driveway).
84 o. Defect caused by unsafe concentrations of, or unsafe conditions relating to, radon, radium in water supplies, lead in paint,
85 lead in soil, lead in water supplies or plumbing system, or other potentially hazardous or toxic substances on the Property.
86 **NOTE: Specific federal lead paint disclosure requirements must be complied with in the sale of most residential**
87 **properties built before 1978.**
88 p. Presence of asbestos or asbestos-containing materials on the Property.
89 q. Defect caused by unsafe concentrations of, unsafe conditions relating to, or the storage of, hazardous or toxic substances
90 on neighboring properties.
91 r. Current or previous termite, powder-post beetle or carpenter ant infestations or Defects caused by animal or other insect
92 infestations.
93 s. Defects in a wood burning stove or fireplace or Defects caused by a fire in a stove or fireplace or elsewhere on the
94 Property.
95 t. Remodeling affecting the Property's structure or mechanical systems or additions to Property during Seller's ownership
96 without required permits.
97 u. Federal, state, or local regulations requiring repairs, alterations or corrections of an existing condition.
98 v. Notice of property tax increases, other than normal annual increases, or pending property reassessment.
99 w. Remodeling that may increase Property's assessed value.
100 x. Proposed or pending special assessments.
101 y. Property is located within a special purpose district, such as a drainage district, that has the authority to impose
102 assessments against the real property located within the district.
103 z. Proposed construction of a public project that may affect the use of the Property.
104 aa. Subdivision homeowners' associations, common areas co-owned with others, zoning violations or nonconforming uses,
105 rights-of-way, easements or another use of a part of the Property by non-owners, other than recorded utility easements.
106 bb. Structure on the Property is designated as an historic building or part of the Property is in an historic district.
107 cc. Any land division involving the Property for which required state or local permits had not been obtained.
108 dd. Violation of state or local smoke and carbon monoxide detector laws.
109 ee. High voltage electric (100 KV or greater) or steel natural gas transmission lines located on but not directly serving the
110 Property.
111 ff. The Property is subject to a mitigation plan required by Wisconsin Department of Natural Resources (DNR) rules related
112 to county shoreland zoning ordinances that obligates the owner to establish or maintain certain measures related to
113 shoreland conditions, enforceable by the county.
114 gg. Other Defects affecting the Property.
115 **(Definitions Continued on page 4)**

116 **CLOSING** This transaction is to be closed no later than _____ February 7, 2015 _____

117 _____ at the place selected by Seller, unless otherwise agreed by the Parties in writing.

118 **CLOSING PRORATIONS** The following items, if applicable, shall be prorated at closing, based upon date of closing values:

119 real estate taxes, rents, prepaid insurance (if assumed), private and municipal charges, property owner's association

120 assessments, fuel and _____.

121 **CAUTION: Provide basis for utility charges, fuel or other prorations if date of closing value will not be used.**

122 Any income, taxes or expenses shall accrue to Seller, and be prorated at closing, through the day prior to closing.

123 Real estate taxes shall be prorated at closing based on [CHECK BOX FOR APPLICABLE PRORATION FORMULA]:

124    [ X ] The net general real estate taxes for the preceding year, or the current year if available (Net general real estate

125 taxes are defined as general property taxes after state tax credits and lottery credits are deducted) (NOTE: THIS CHOICE

126 APPLIES IF NO BOX IS CHECKED)

127    [ ] Current assessment times current mill rate (current means as of the date of closing)

128    [ ] Sale price, multiplied by the municipality area-wide percent of fair market value used by the assessor in the prior

129 year, or current year if known, multiplied by current mill rate (current means as of the date of closing)

130    [ ] _____.

131 **CAUTION: Buyer is informed that the actual real estate taxes for the year of closing and subsequent years may be**

132 **substantially different than the amount used for proration especially in transactions involving new construction,**

133 **extensive rehabilitation, remodeling or area-wide re-assessment. Buyer is encouraged to contact the local assessor**

134 **regarding possible tax changes.**

135    [ ] Buyer and Seller agree to re-prorate the real estate taxes, through the day prior to closing based upon the taxes on

136 the actual tax bill for the year of closing, with Buyer and Seller each owing his or her pro-rata share. Buyer shall, within 5

137 days of receipt, forward a copy of the bill to the forwarding address Seller agrees to provide at closing. The Parties shall

138 re-prorate within 30 days of Buyer's receipt of the actual tax bill. Buyer and Seller agree this is a post-closing obligation

139 and is the responsibility of the Parties to complete, not the responsibility of the real estate brokers in this transaction.

140 **LEASED PROPERTY** If Property is currently leased and lease(s) extend beyond closing, Seller shall assign Seller's rights

141 under said lease(s) and transfer all security deposits and prepaid rents thereunder to Buyer at closing. The terms of the

142 (written) (oral) STRIKE ONE lease(s), if any, are _____

143 _____. Insert additional terms, if applicable, at lines 165-172 or 435-442 or attach as an addendum per line 434.

144 **RENTAL WEATHERIZATION** This transaction (is) (is not) STRIKE ONE exempt from Wisconsin Rental Weatherization

145 Standards (Wis. Admin. Code Ch. Comm 67). If not exempt, (Buyer) (Seller) STRIKE ONE ("Buyer" if neither is stricken) shall

146 be responsible for compliance, including all costs, with Wisconsin Rental Weatherization Standards. If Seller is responsible for

147 compliance, Seller shall provide a Certificate of Compliance at closing.

148 **REAL ESTATE CONDITION REPORT** Wisconsin law requires owners of property which includes 1-4 dwelling units to

149 provide Buyers with a Real Estate Condition Report. Excluded from this requirement are sales of property that has never been

150 inhabited, sales exempt from the real estate transfer fee, and sales by certain court-appointed fiduciaries, (for example,

151 personal representatives who have never occupied the Property). The form of the Report is found in Wis. Stat. § 709.03. The

152 law provides: "§ 709.02 Disclosure . . . the owner of the property shall furnish, not later than 10 days after acceptance of the

153 contract of sale . . ., to the prospective Buyer of the property a completed copy of the report . . . A prospective Buyer who does

154 not receive a report within the 10 days may, within 2 business days after the end of that 10 day period, rescind the contract of

155 sale . . . by delivering a written notice of rescission to the owner or the owner's agent." Buyer may also have certain rescission

156 rights if a Real Estate Condition Report disclosing defects is furnished before expiration of the 10 days, but after the Offer is

157 submitted to Seller. Buyer should review the report form or consult with an attorney for additional information regarding

158 rescission rights.

159 **PROPERTY CONDITION REPRESENTATIONS** Seller represents to Buyer that as of the date of acceptance Seller has no

160 notice or knowledge of Conditions Affecting the Property or Transaction (lines 64-114) other than those identified in Seller's

161 Real Estate Condition Report dated _____ October 20, 2014 _____ , which was received by Buyer prior to Buyer

162 signing this Offer and which is made a part of this Offer by reference [ COMPLETE DATE OR STRIKE AS APPLICABLE ] and

163 _____

164 _____ [ INSERT CONDITIONS NOT ALREADY INCLUDED IN THE CONDITION REPORT ]

165 **ADDITIONAL PROVISIONS/CONTINGENCIES** _____

166 _____

167 _____

168 _____

169 _____

170 _____

171 _____

172 _____

173 **DEFINITIONS CONTINUED FROM PAGE 2**

174 ■ DEADLINES: "Deadlines" expressed as a number of "days" from an event, such as acceptance, are calculated by excluding
175 the day the event occurred and by counting subsequent calendar days. The deadline expires at midnight on the last day.
176 Deadlines expressed as a specific number of "business days" exclude Saturdays, Sundays, any legal public holiday under
177 Wisconsin or Federal law, and any other day designated by the President such that the postal service does not receive
178 registered mail or make regular deliveries on that day. Deadlines expressed as a specific number of "hours" from the
179 occurrence of an event, such as receipt of a notice, are calculated from the exact time of the event, and by counting 24 hours
180 per calendar day. Deadlines expressed as a specific day of the calendar year or as the day of a specific event, such as
181 closing, expire at midnight of that day.

182 ■ DEFECT: "Defect" means a condition that would have a significant adverse effect on the value of the Property; that would
183 significantly impair the health or safety of future occupants of the Property; or that if not repaired, removed or replaced would
184 significantly shorten or adversely affect the expected normal life of the premises.

185 ■ FIXTURE: A "Fixture" is an item of property which is physically attached to or so closely associated with land or
186 improvements so as to be treated as part of the real estate, including, without limitation, physically attached items not easily
187 removable without damage to the premises. Items specifically adapted to the premises and items customarily treated as
188 fixtures, including, but not limited to, all: garden bulbs; plants; shrubs and trees; screen and storm doors and windows; electric
189 lighting fixtures; window shades; curtain and traverse rods; blinds and shutters; central heating and cooling units and attached
190 equipment; water heaters and treatment systems; sump pumps; attached or fitted floor coverings; awnings; attached
191 antennas; garage door openers and remote controls; installed security systems; central vacuum systems and accessories; in-
192 ground sprinkler systems and component parts; built-in appliances; ceiling fans; fences; storage buildings on permanent
193 foundations and docks/piers on permanent foundations.

194 **CAUTION: Exclude any Fixtures to be retained by Seller or which are rented (e.g., water softener or other water**
195 **conditioning systems, home entertainment and satellite dish components, L.P. tanks, etc.) on lines 17-18.**

196 ■ PROPERTY: Unless otherwise stated, "Property" means the real estate described at lines 4-7.

197 **PROPERTY DIMENSIONS AND SURVEYS** Buyer acknowledges that any land, building or room dimensions, or total
198 acreage or building square footage figures, provided to Buyer by Seller or by a broker, may be approximate because of
199 rounding, formulas used or other reasons, unless verified by survey or other means.

200 **CAUTION: Buyer should verify total square footage formula, total square footage/acreage figures, and land, building**
201 **or room dimensions, if material.**

202 **BUYER'S PRE-CLOSING WALK-THROUGH** Within 3 days prior to closing, at a reasonable time pre-approved by Seller or
203 Seller's agent, Buyer shall have the right to walk through the Property to determine that there has been no significant change
204 in the condition of the Property, except for ordinary wear and tear and changes approved by Buyer, and that any defects
205 Seller has agreed to cure have been repaired in the manner agreed to by the Parties.

206 **PROPERTY DAMAGE BETWEEN ACCEPTANCE AND CLOSING** Seller shall maintain the Property until the earlier of
207 closing or occupancy of Buyer in materially the same condition as of the date of acceptance of this Offer, except for ordinary
208 wear and tear. If, prior to closing, the Property is damaged in an amount of not more than five percent (5%) of the selling price,
209 Seller shall be obligated to repair the Property and restore it to the same condition that it was on the day of this Offer. No later
210 than closing, Seller shall provide Buyer with lien waivers for all lienable repairs and restoration. If the damage shall exceed
211 such sum, Seller shall promptly notify Buyer in writing of the damage and this Offer may be canceled at option of Buyer.
212 Should Buyer elect to carry out this Offer despite such damage, Buyer shall be entitled to the insurance proceeds, if any,
213 relating to the damage to the Property, plus a credit towards the purchase price equal to the amount of Seller's deductible on
214 such policy, if any. However, if this sale is financed by a land contract or a mortgage to Seller, any insurance proceeds shall
215 be held in trust for the sole purpose of restoring the Property.

216 **IF LINE 217 IS NOT MARKED OR IS MARKED N/A LINES 257-263 APPLY.**
217 [ X ] **FINANCING CONTINGENCY:** This Offer is contingent upon Buyer being able to obtain a written Conventional
218 _____ [INSERT LOAN PROGRAM OR SOURCE] first mortgage
219 loan commitment as described below, within __5__ days of acceptance of this Offer. The financing selected shall be in an
220 amount of not less than $ 155,325.00 _____ for a term of not less than __30__ years, amortized over not less than
221 __30__ years. Initial monthly payments of principal and interest shall not exceed $ 730.48 _____. Monthly payments may
222 also include 1/12th of the estimated net annual real estate taxes, hazard insurance premiums, and private mortgage insurance
223 premiums. The mortgage may not include a prepayment premium. Buyer agrees to pay discount points and/or loan origination
224 fee in an amount not to exceed ____0____ % of the loan. If the purchase price under this Offer is modified, the financed
225 amount, unless otherwise provided, shall be adjusted to the same percentage of the purchase price as in this contingency and
226 the monthly payments shall be adjusted as necessary to maintain the term and amortization stated above.
227 **CHECK AND COMPLETE APPLICABLE FINANCING PROVISION AT LINE 228 OR 229.**
228 ☒ **FIXED RATE FINANCING:** The annual rate of interest shall not exceed __3.850__ %.
229 ☐ **ADJUSTABLE RATE FINANCING:** The initial annual interest rate shall not exceed _____ %. The initial interest
230 rate shall be fixed for _____ months, at which time the interest rate may be increased not more than _____ % per
231 year. The maximum interest rate during the mortgage term shall not exceed _____ %. Monthly payments of principal
232 and interest may be adjusted to reflect interest changes.
233 If Buyer is using multiple loan sources or obtaining a construction loan or land contract financing, describe at lines
234 165-172 or 435-442 or in an addendum attached per line 434.
235 ■ <u>BUYER'S LOAN COMMITMENT:</u> Buyer agrees to pay all customary loan and closing costs, to promptly apply for a
236 mortgage loan, and to provide evidence of application promptly upon request of Seller. If Buyer qualifies for the loan described
237 in this Offer or another loan acceptable to Buyer, Buyer agrees to deliver to Seller a copy of the written loan commitment no
238 later than the deadline at line 219. **Buyer and Seller agree that delivery of a copy of any written loan commitment to**
239 **Seller (even if subject to conditions) shall satisfy Buyer's financing contingency if, after review of the loan**
240 **commitment, Buyer has directed, in writing, delivery of the loan commitment. Buyer's written direction shall**
241 **accompany the loan commitment. Delivery shall not satisfy this contingency if accompanied by a notice of**
242 **unacceptability.**
243 **CAUTION: The delivered commitment may contain conditions Buyer must yet satisfy to obligate the lender to provide**
244 **the loan. BUYER, BUYER'S LENDER AND AGENTS OF BUYER OR SELLER SHALL NOT DELIVER A LOAN**
245 **COMMITMENT TO SELLER OR SELLER'S AGENT WITHOUT BUYER'S PRIOR WRITTEN APPROVAL OR UNLESS**
246 **ACCOMPANIED BY A NOTICE OF UNACCEPTABILITY.**
247 ■ <u>SELLER TERMINATION RIGHTS:</u> If Buyer does not make timely delivery of said commitment; Seller may terminate this
248 Offer if Seller delivers a written notice of termination to Buyer prior to Seller's Actual Receipt of a copy of Buyer's written loan
249 commitment.
250 ■ <u>FINANCING UNAVAILABILITY:</u> If financing is not available on the terms stated in this Offer (and Buyer has not already
251 delivered an acceptable loan commitment for other financing to Seller), Buyer shall promptly deliver written notice to Seller of
252 same including copies of lender(s)' rejection letter(s) or other evidence of unavailability. Unless a specific loan source is
253 named in this Offer, Seller shall then have 10 days to deliver to Buyer written notice of Seller's decision to finance this
254 transaction on the same terms set forth in this Offer, and this Offer shall remain in full force and effect, with the time for closing
255 extended accordingly. If Seller's notice is not timely given, this Offer shall be null and void. Buyer authorizes Seller to obtain
256 any credit information reasonably appropriate to determine Buyer's credit worthiness for Seller financing.
257 ■ <u>IF THIS OFFER IS NOT CONTINGENT ON FINANCING:</u> Within 7 days of acceptance, a financial institution or third party
258 in control of Buyer's funds shall provide Seller with reasonable written verification that Buyer has, at the time of verification,
259 sufficient funds to close. If such written verification is not provided, Seller has the right to terminate this Offer by delivering
260 written notice to Buyer. Buyer may or may not obtain mortgage financing but does not need the protection of a financing
261 contingency. Seller agrees to allow Buyer's appraiser access to the Property for purposes of an appraisal. Buyer understands
262 and agrees that this Offer is not subject to the appraisal meeting any particular value, unless this Offer is subject to an
263 appraisal contingency, nor does the right of access for an appraisal constitute a financing contingency.
264 [ X ] **APPRAISAL CONTINGENCY:** This Offer is contingent upon the Buyer or Buyer's lender having the Property appraised
265 at Buyer's expense by a Wisconsin licensed or certified independent appraiser who issues an appraisal report dated
266 subsequent to the date of this Offer indicating an appraised value for the Property equal to or greater than the agreed upon
267 purchase price. This contingency shall be deemed satisfied unless Buyer, within __30__ days of acceptance, delivers
268 to Seller a copy of the appraisal report which indicates that the appraised value is not equal to or greater than the agreed upon
269 purchase price, accompanied by a written notice of termination.
270 **CAUTION: An appraisal ordered by Buyer's lender may not be received until shortly before closing. Consider whether**
271 **deadlines provide adequate time for performance.**

272 **DISTRIBUTION OF INFORMATION** Buyer and Seller authorize the agents of Buyer and Seller to: (i) distribute copies of the
273 Offer to Buyer's lender, appraisers, title insurance companies and any other settlement service providers for the transaction as
274 defined by the Real Estate Settlement Procedures Act (RESPA); (ii) report sales and financing concession data to multiple
275 listing service sold databases; and (iii) provide active listing, pending sale, closed sale and financing concession information
276 and data, and related information regarding seller contributions, incentives or assistance, and third party gifts, to appraisers
277 researching comparable sales, market conditions and listings, upon inquiry.

278 **DEFAULT** Seller and Buyer each have the legal duty to use good faith and due diligence in completing the terms and
279 conditions of this Offer. A material failure to perform any obligation under this Offer is a default which may subject the
280 defaulting party to liability for damages or other legal remedies.

281     If <u>Buyer defaults</u>, Seller may:
282     (1) sue for specific performance and request the earnest money as partial payment of the purchase price; or
283     (2) terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) sue for actual
284     damages.
285     If <u>Seller defaults</u>, Buyer may:
286     (1) sue for specific performance; or
287     (2) terminate the Offer and request the return of the earnest money, sue for actual damages, or both.
288     In addition, the Parties may seek any other remedies available in law or equity.

289 The Parties understand that the availability of any judicial remedy will depend upon the circumstances of the situation and the
290 discretion of the courts. If either Party defaults, the Parties may renegotiate the Offer or seek nonjudicial dispute resolution
291 instead of the remedies outlined above. By agreeing to binding arbitration, the Parties may lose the right to litigate in a court of
292 law those disputes covered by the arbitration agreement.

293 **NOTE: IF ACCEPTED, THIS OFFER CAN CREATE A LEGALLY ENFORCEABLE CONTRACT. BOTH PARTIES SHOULD**
294 **READ THIS DOCUMENT CAREFULLY. BROKERS MAY PROVIDE A GENERAL EXPLANATION OF THE PROVISIONS**
295 **OF THE OFFER BUT ARE PROHIBITED BY LAW FROM GIVING ADVICE OR OPINIONS CONCERNING YOUR LEGAL**
296 **RIGHTS UNDER THIS OFFER OR HOW TITLE SHOULD BE TAKEN AT CLOSING. AN ATTORNEY SHOULD BE**
297 **CONSULTED IF LEGAL ADVICE IS NEEDED.**

298 **ENTIRE CONTRACT** This Offer, including any amendments to it, contains the entire agreement of the Buyer and Seller
299 regarding the transaction. All prior negotiations and discussions have been merged into this Offer. This agreement binds
300 and inures to the benefit of the Parties to this Offer and their successors in interest.

301 **NOTICE ABOUT SEX OFFENDER REGISTRY** You may obtain information about the sex offender registry and persons
302 registered with the registry by contacting the Wisconsin Department of Corrections on the Internet at
303 http://www.widocoffenders.org or by telephone at (608) 240-5830.

304   N/A **CLOSING OF BUYER'S PROPERTY CONTINGENCY:** This Offer is contingent upon the closing of the sale of Buyer's
305   property located at _____ , no later than _____ . If Seller accepts
306   a bona fide secondary offer, Seller may give written notice to Buyer of acceptance. If Buyer does not deliver to Seller a written
307   waiver of the Closing of Buyer's Property Contingency and _____

308   _____
309   **[INSERT OTHER REQUIREMENTS, IF ANY (e.g., PAYMENT OF ADDITIONAL EARNEST MONEY, WAIVER OF ALL**
310   **CONTINGENCIES, OR PROVIDING EVIDENCE OF SALE OR BRIDGE LOAN, etc.)]** within ____ hours of Buyer's Actual
311   Receipt of said notice, this Offer shall be null and void.
312   N/A **SECONDARY OFFER:** This Offer is secondary to a prior accepted offer. This Offer shall become primary upon delivery
313   of written notice to Buyer that this Offer is primary. Unless otherwise provided, Seller is not obligated to give Buyer notice prior
314   to any deadline, nor is any particular secondary buyer given the right to be made primary ahead of other secondary buyers.
315   Buyer may declare this Offer null and void by delivering written notice of withdrawal to Seller prior to delivery of Seller's notice
316   that this Offer is primary. Buyer may not deliver notice of withdrawal earlier than ____ days after acceptance of this Offer. All
317   other Offer deadlines which are run from acceptance shall run from the time this Offer becomes primary.
318   **[ TIME IS OF THE ESSENCE ]** "Time is of the Essence" as to: (1) earnest money payment(s); (2) binding acceptance; (3)
319   occupancy; (4) date of closing; (5) contingency Deadlines STRIKE AS APPLICABLE and all other dates and Deadlines in this
320   Offer except: _____
321   _____
322   _____ . If "Time is of the Essence" applies to a date or
323   Deadline, failure to perform by the exact date or Deadline is a breach of contract. If "Time is of the Essence" does not apply to
324   a date or Deadline, then performance within a reasonable time of the date or Deadline is allowed before a breach occurs.
325   **[ TITLE EVIDENCE ]**
326   ■ CONVEYANCE OF TITLE: **Upon payment of the purchase price, Seller shall convey the Property by warranty deed**
327   **(trustee's deed if Seller is a trust, personal representative's deed if Seller is an estate or other conveyance as**
328   **provided herein),** free and clear of all liens and encumbrances, except: municipal and zoning ordinances and agreements
329   entered under them, recorded easements for the distribution of utility and municipal services, recorded building and use
330   restrictions and covenants, present uses of the Property in violation of the foregoing disclosed in Seller's Real Estate
331   Condition Report and in this Offer, general taxes levied in the year of closing and _____
332   _____
333   _____
334   _____
335   which constitutes merchantable title for purposes of this transaction. Seller shall complete and execute the documents
336   necessary to record the conveyance at Seller's cost and pay the Wisconsin Real Estate Transfer Fee.
337   **WARNING: Municipal and zoning ordinances, recorded building and use restrictions, covenants and easements may**
338   **prohibit certain improvements or uses and therefore should be reviewed, particularly if Buyer contemplates making**
339   **improvements to Property or a use other than the current use.**
340   ■ TITLE EVIDENCE: Seller shall give evidence of title in the form of an owner's policy of title insurance in the amount of the
341   purchase price on a current ALTA form issued by an insurer licensed to write title insurance in Wisconsin. Seller shall pay all
342   costs of providing title evidence to Buyer. Buyer shall pay all costs of providing title evidence required by Buyer's lender.
343   ■ GAP ENDORSEMENT: Seller shall provide a "gap" endorsement or equivalent gap coverage at (Seller's)(Buyer's)
344   STRIKE ONE ("Seller's" if neither stricken) cost to provide coverage for any liens or encumbrances first filed or recorded after
345   the effective date of the title insurance commitment and before the deed is recorded, subject to the title insurance policy
346   exclusions and exceptions, provided the title company will issue the endorsement. If a gap endorsement or equivalent gap
347   coverage is not available, Buyer may give written notice that title is not acceptable for closing (see lines 353-359).
348   ■ PROVISION OF MERCHANTABLE TITLE: For purposes of closing, title evidence shall be acceptable if the required title
349   insurance commitment is delivered to Buyer's attorney or Buyer not less than 5 business days before closing, showing title to
350   the Property as of a date no more than 15 days before delivery of such title evidence to be merchantable per lines 326-335,
351   subject only to liens which will be paid out of the proceeds of closing and standard title insurance requirements and
352   exceptions, as appropriate.
353   ■ TITLE NOT ACCEPTABLE FOR CLOSING: If title is not acceptable for closing, Buyer shall notify Seller in writing of
354   objections to title by the time set for closing. In such event, Seller shall have a reasonable time, but not exceeding 15 days, to
355   remove the objections, and the time for closing shall be extended as necessary for this purpose. In the event that Seller is
356   unable to remove said objections, Buyer shall have 5 days from receipt of notice thereof, to deliver written notice waiving the
357   objections, and the time for closing shall be extended accordingly. If Buyer does not waive the objections, this Offer shall be
358   null and void. Providing title evidence acceptable for closing does not extinguish Seller's obligations to give
359   merchantable title to Buyer.

360 ■ SPECIAL ASSESSMENTS/OTHER EXPENSES: Special assessments, if any, levied or for work actually commenced prior
361 to the date of this Offer shall be paid by Seller no later than closing. All other special assessments shall be paid by
362 Buyer.
363 **CAUTION: Consider a special agreement if area assessments, property owner's association assessments, special**
364 **charges for current services under Wis. Stat. § 66.0627 or other expenses are contemplated. "Other expenses" are**
365 **one-time charges or ongoing use fees for public improvements (other than those resulting in special assessments)**
366 **relating to curb, gutter, street, sidewalk, municipal water, sanitary and storm water and storm sewer (including all**
367 **sewer mains and hook-up/connection and interceptor charges), parks, street lighting and street trees, and impact**
368 **fees for other public facilities, as defined in Wis. Stat. § 66.0617(1)(f).**
369 **EARNEST MONEY**
370 ■ HELD BY: Unless otherwise agreed, earnest money shall be paid to and held in the trust account of the listing broker
371 (Buyer's agent if Property is not listed or Seller's account if no broker is involved), until applied to the purchase price or
372 otherwise disbursed as provided in the Offer.
373 **CAUTION: Should persons other than a broker hold earnest money, an escrow agreement should be drafted by the**
374 **Parties or an attorney. If someone other than Buyer makes payment of earnest money, consider a special**
375 **disbursement agreement.**
376 ■ DISBURSEMENT: If negotiations do not result in an accepted offer, the earnest money shall be promptly disbursed (after
377 clearance from payor's depository institution if earnest money is paid by check) to the person(s) who paid the earnest money.
378 At closing, earnest money shall be disbursed according to the closing statement. If this Offer does not close, the earnest
379 money shall be disbursed according to a written disbursement agreement signed by all Parties to this Offer. If said
380 disbursement agreement has not been delivered to broker within 60 days after the date set for closing, broker may disburse
381 the earnest money: (1) as directed by an attorney who has reviewed the transaction and does not represent Buyer or Seller;
382 (2) into a court hearing a lawsuit involving the earnest money and all Parties to this Offer; (3) as directed by court order; or (4)
383 any other disbursement required or allowed by law. Broker may retain legal services to direct disbursement per (1) or to file an
384 interpleader action per (2) and broker may deduct from the earnest money any costs and reasonable attorneys fees, not to
385 exceed $250, prior to disbursement.
386 ■ LEGAL RIGHTS/ACTION: Broker's disbursement of earnest money does not determine the legal rights of the Parties in
387 relation to this Offer. Buyer's or Seller's legal right to earnest money cannot be determined by broker. At least 30 days prior to
388 disbursement per (1) or (4) above, broker shall send Buyer and Seller notice of the disbursement by certified mail. If Buyer or
389 Seller disagree with broker's proposed disbursement, a lawsuit may be filed to obtain a court order regarding disbursement.
390 Small Claims Court has jurisdiction over all earnest money disputes arising out of the sale of residential property with 1-4
391 dwelling units and certain other earnest money disputes. Buyer and Seller should consider consulting attorneys regarding their
392 legal rights under this Offer in case of a dispute. Both Parties agree to hold the broker harmless from any liability for good faith
393 disbursement of earnest money in accordance with this Offer or applicable Department of Regulation and Licensing
394 regulations concerning earnest money. See Wis. Admin. Code Ch. RL 18.
395 **INSPECTIONS AND TESTING** Buyer may only conduct inspections or tests if specific contingencies are included as a part of
396 this Offer. An "inspection" is defined as an observation of the Property which does not include an appraisal or testing of the
397 Property, other than testing for leaking carbon monoxide, or testing for leaking LP gas or natural gas used as a fuel source,
398 which are hereby authorized. A "test" is defined as the taking of samples of materials such as soils, water, air or building
399 materials from the Property and the laboratory or other analysis of these materials. Seller agrees to allow Buyer's inspectors,
400 testers and appraisers reasonable access to the Property upon advance notice, if necessary to satisfy the contingencies in
401 this Offer. Buyer and licensees may be present at all inspections and testing. Except as otherwise provided, Seller's
402 authorization for inspections does not authorize Buyer to conduct testing of the Property.
403 **NOTE: Any contingency authorizing testing should specify the areas of the Property to be tested, the purpose of the**
404 **test, (e.g., to determine if environmental contamination is present), any limitations on Buyer's testing and any other**
405 **material terms of the contingency.**
406 Buyer agrees to promptly restore the Property to its original condition after Buyer's inspections and testing are completed
407 unless otherwise agreed to with Seller. Buyer agrees to promptly provide copies of all inspection and testing reports to Seller.
408 Seller acknowledges that certain inspections or tests may detect environmental pollution which may be required to be reported
409 to the Wisconsin Department of Natural Resources.

410 [ X ] **INSPECTION CONTINGENCY:** This contingency only authorizes inspections, not testing (see lines 395-409). This
411 Offer is contingent upon a Wisconsin registered home inspector performing a home inspection of the Property which discloses
412 no Defects. This Offer is further contingent upon a qualified independent inspector or independent qualified third party
413 performing an inspection of _____
414 _____ (list any Property component(s) to be separately inspected, e.g.,
415 swimming pool, roof, foundation, chimney, etc.) which discloses no Defects. Buyer shall order the inspection(s) and be
416 responsible for all costs of inspection(s). Buyer may have follow-up inspections recommended in a written report resulting
417 from an authorized inspection, provided they occur prior to the deadline specified at line 421. Inspection(s) shall be performed
418 by a qualified independent inspector or independent qualified third party.
419 **CAUTION: Buyer should provide sufficient time for the home inspection and/or any specialized inspection(s), as well**
420 **as any follow-up inspection(s).**
421 This contingency shall be deemed satisfied unless Buyer, within _15_ days of acceptance, delivers to Seller a copy of the
422 written inspection report(s) and a written notice listing the Defect(s) identified in those report(s) to which Buyer objects (Notice
423 of Defects).
424 **CAUTION: A proposed amendment is not a Notice of Defects and will not satisfy this notice requirement.**
425 For the purposes of this contingency, Defects (see lines 182-184) do not include structural, mechanical or other conditions the
426 nature and extent of which Buyer had actual knowledge or written notice before signing this Offer.
427 ■ **RIGHT TO CURE:** Seller (shall)(shall not) STRIKE ONE ("shall" if neither is stricken) have a right to cure the Defects. If
428 Seller has right to cure, Seller may satisfy this contingency by: (1) delivering written notice to Buyer within 10 days of
429 Buyer's delivery of the Notice of Defects stating Seller's election to cure Defects; (2) curing the Defects in a good and
430 workmanlike manner; and (3) delivering to Buyer a written report detailing the work done within 3 days prior to closing. This
431 Offer shall be null and void if Buyer makes timely delivery of the Notice of Defects and written inspection report(s) and: (1)
432 Seller does not have a right to cure or (2) Seller has a right to cure but: (a) Seller delivers written notice that Seller will not cure
433 or (b) Seller does not timely deliver the written notice of election to cure.
434 [ X ] **ADDENDA:** The attached _____ A,C,D,S _____ is/are made part of this Offer.
435 [ADDITIONAL PROVISIONS/CONTINGENCIES]_____
436 _____
437 _____
438 _____
439 _____
440 _____
441 _____
442 _____
443 This Offer was drafted by [Licensee and Firm] _____ Terry Schmidt of Castle Realty,LLC
444 _____ on ____ December 15, 2014 ____ .
445 (x) _____      December 16, 2014
446 Buyer's Signature ▲ Print Name Here ▶ Kelly Marie Isensee      Date ▲
447 (x) _____
448 Buyer's Signature ▲ Print Name Here ▶      Date ▲
449 [EARNEST MONEY RECEIPT] Broker acknowledges receipt of earnest money as per line 10 of the above Offer.
450 _____ Broker (By) _____
451 **SELLER ACCEPTS THIS OFFER. THE WARRANTIES, REPRESENTATIONS AND COVENANTS MADE IN THIS OFFER**
452 **SURVIVE CLOSING AND THE CONVEYANCE OF THE PROPERTY. SELLER AGREES TO CONVEY THE PROPERTY**
453 **ON THE TERMS AND CONDITIONS AS SET FORTH HEREIN AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS**
454 **OFFER.**
455 (x) _____
456 Seller's Signature ▲ Print Name Here ▶      Date ▲
457 (x) _____
458 Seller's Signature ▲ Print Name Here ▶      Date ▲
459 This Offer was presented to Seller by [Licensee and Firm] John M Sheppard
460 RE/MAX First Choice on 12/19/14 at 4:30 a.m./p.m.
461 This Offer is rejected _____ This Offer is countered [See attached counter] KRSR 12/19/14
462      Seller Initials ▲ Date ▲          Seller Initials ▲ Date ▲

# ADDENDUM C TO OFFER TO PURCHASE

Addendum attached to and made part of the Offer to Purchase dated __12-15-14__ made by the Buyer, _____ with respect to the Property at: __120 S Clyde St, Holmen, Wi__

THE PROVISIONS SET FORTH BELOW ARE A PART OF THIS ADDENDUM IF MARKED. SUCH AS WITH AN "X." THEY ARE NOT PART OF THIS ADDENDUM IF MARKED WITH "N/A" OR ARE LEFT BLANK.

TIME IS OF THE ESSENCE AS TO ADDITIONAL EARNEST MONEY PAYMENT, ACCEPTANCE, LEGAL POSSESSION, OCCUPANCY, DATE OF CLOSING, AND AS TO ALL DATES INSERTED IN THIS OFFER.

_____ **RADON TEST:** This offer is contingent upon property being tested prior to closing to determine the level of radon gas in property. Buyers to select testing firm and Buyers / Sellers (strike one) to pay for cost of test. Such test to be performed not later than_____ days after Offer acceptance. A radon level of less than four picoCuries per liter (pCi/L) will be acceptable to Buyers. If the level is four pCi/L or above, Buyers and Sellers shall have five (5) business days in which to renegotiate this contract. If they cannot agree, this Purchase Agreement shall be cancelled, and all earnest money on deposit shall be returned to Buyers. Buyers are aware that a short term radon test may not be a reliable indication of the average radon level present in the property over a longer time period. Buyers are encouraged to obtain more information on the radon issue from appropriate government agencies.

_____ **WOOD DESTROYING ORGANISM INSPECTION:** Offer contingent upon Sellers/Buyers having the property inspected by a certified Inspector prior to closing for wood destroying organisms and to pay for inspection fee. If wood destroying organisms are found, Seller shall have the property treated, and agree to pay a reasonable cost not to exceed $_____ for removal of such wood destroying organism. If the inspection were to indicate that structural damage to the property has occurred due to the existence of wood destroying organisms, either party may cancel this Purchase Agreement within five (5) business days of receipt of such written inspection report. If cancelled, any earnest money on deposit shall be returned to Buyers.

_____ **FUEL OIL/LP PRORATION:** Buyer shall purchase from Seller any fuel/LP gas that may be in the tank. The price shall be the market price of the fuel/LP gas [one week prior to the closing date]OR[the date the tank was last filled, if known]

_____ **CARBON MONOXIDE AND SMOKE DETECTORS:** Wisconsin law requires working carbon monoxide (CO) and smoke detectors on all floors (including basements) of all residential properties (CO detectors are not required if no attached garage and no combustion sources of CO are present). Seller shall be responsible for installation (and cost) of all required smoke and CO detectors in proper locations per government guidelines.

_____ **ELECTRICAL SERVICE CONTINGENCY:** If the house has 60 amp electrical service or fuses instead of circuit breakers and the Buyers insurance company and/or lender won't accept without an electrical service upgrade, Buyers and Sellers shall have five (5) business days in which to renegotiate this contract. If they cannot agree, purchase agreement shall be canceled and all earnest money on deposit shall be returned to Buyer.

*SEE PAGE 2 FOR WAIVERS*

**WAIVERS:**

1

**HOME INSPECTION WAIVER:** Broker Recommends that Buyer obtain a home inspection, even if Seller or Broker has provided Buyer with a copy of a home inspection report obtained by seller or a previous buyer, IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.
_____ Buyer had decided not to obtain a general home inspection and, unless Buyer makes a subsequent election in writing during Buyer's investigation period, if any, Buyer waives the right to obtain a general home inspection.

**RADON TEST WAIVER:** The Broker wants to make the Buyer aware of naturally occurring radon gas within soils or waters which can, in high concentration, be a health hazard to some people. Sellers may not have had a radon test. Broker and Broker's Agent make no representations or warranties as to the radon gas level of this property.
_____ Buyers waive their option to a radon test at this time, and this offer is not contingent on such test.

**WARRANTY PLAN PURCHASE WAIVER:** Broker has informed Buyer of the cost of having the mechanical components of the above premise protected.
_____ I hereby decline such coverage and agree to hold the Real Estate Broker and his/her agents harmless in the event of subsequent, latent, or hidden mechanical defects, malfunctions, or failures which would otherwise have been covered, unless there is proven misrepresentation as to the conditions of the components that could have been covered by the warranty plan.

**WOOD EATING INSECT INSPECTION WAIVER:** Buyers are aware that wood eating insects do exist in this area. Buyer is choosing not to have the property inspected for wood eating insects at this time. No representations or warranties have been made as to the condition of the property concerning this matter.
_____ Buyer declines inspections and this offer is not contingent on such inspection.

_____ **LEAD BASE PAINT PAMPHLET:** Buyer received EPA-approved lead hazard information pamphlet if property was built before 1978.

**BUYER(S):** _____ **DATE:** 12-16-14

**SELLER(S):** _____ **DATE:** 12|19|14



*REVISED 10/21/2014*

2

WISCONSIN REALTORS® ASSOCIATION
4801 Forest Run Road Madison, WI 53704

## ADDENDUM A TO THE OFFER TO PURCHASE

1  This Addendum is made part of the Offer to Purchase dated ___December 15, 2014___, made by ___Kelly Marie Isensee___
2  (Buyer), with respect to the Property at 120 E Clyde St, Holmen, WI 54636
3  **CAUTION: Buyer must include contingencies in this Offer for any additional tests or inspections Buyer wishes to conduct. Specific**
4  **addenda are available for testing or evaluation of Wells, Well Water, Septic Systems, Lead-Based Paint, Wetlands and Lead/Arsenic**
5  **Pesticides. Parties should consult with legal counsel with questions regarding testing or this Addendum.**
6  [ ] **RADON TESTING CONTINGENCY:** This Offer is contingent upon Buyer having a qualified third party perform a radon test at the
7  Property in a manner consistent with applicable EPA and Wisconsin Department of Health Services (DHS) protocols and standards and furnish
8  a current written report indicating the radon level is less than 4 picoCuries per liter (pCi/L), at (Buyer's) (Seller's) STRIKE ONE] ("Buyer's" if
9  neither is stricken) expense. This contingency shall be deemed satisfied unless Buyer, no later than _____ days (after acceptance) (prior
10  to closing) STRIKE ONE] ("prior to closing" if neither is stricken), delivers to Seller a written copy of the radon test results report indicating a
11  radon level of 4.0 pCi/L or higher. Seller (shall)(shall not) STRIKE ONE] ("shall" if neither is stricken) have the right to cure. See lines 62-71
12  regarding the Right to Cure.
13  [ ] **TESTING CONTINGENCY:** This Offer is contingent upon (Buyer obtaining)(Seller providing) STRIKE ONE] ("Buyer obtaining" if neither is
14  stricken) a current written report from a qualified independent expert documenting the results of the following test(s) conducted pursuant to
15  applicable government or industry protocols and standards (indicate substances or compounds to be tested, e.g., asbestos (see
16  http://www2.epa.gov/asbestos/protect-your-family), etc.): _____, no later than _____ days (after
17  acceptance)(prior to closing) STRIKE ONE] ("prior to closing" if neither is stricken), at (Buyer's) (Seller's) STRIKE ONE] ("Buyer's" if neither is
18  stricken) expense. Specify any protocols, testing contractors, labs, standards/levels constituting a Defect, financial limits, acceptable repair
19  methodology, etc.: _____ .
20  Seller (shall)(shall not) STRIKE ONE] ("shall" if neither is stricken) have the right to cure. See lines 62-71 regarding the Right to Cure. (the place selected by Buyer)
21  [X] **CLOSING:** The Parties agree that the closing shall be held at (the place selected by Buyer's lender) STRIKE AND COMPLETE AS APPLICABLE] .
22  ( _____ )
23  [ ] **ASSOCIATION FEE:** Buyer acknowledges the (monthly)(quarterly)(annual) STRIKE TWO] association fee of $ _____ .
24  [ ] **HOME WARRANTY PLAN:** Buyer has been informed of the availability of a limited home warranty plan. A limited home warranty plan for
25  a term of one year shall be included, effective on the date of closing, provided the Property qualifies for the plan. The cost of the home warranty
26  shall not exceed $ _____ and will be paid by (Seller)(Buyer) STRIKE ONE] ("Seller" if neither is stricken) at closing. The warranty plan
27  will be provided by the (listing)(cooperating) STRIKE ONE] ("listing" if neither is stricken) broker. Buyer is advised that a home inspection may
28  detect pre-existing conditions which may not be covered under the warranty.
29  [ ] **FLOOD INSURANCE PREMIUMS CONTINGENCY (also see lines 118-123):** This Offer is contingent upon Buyer obtaining, an
30  insurance binder, certificate of insurance or other insurance company documentation or correspondence showing (that Buyer's annual premium
31  for flood insurance for Buyer's initial year of ownership after closing shall not exceed $ _____ )(that Buyer's annual premium will not
32  exceed $ _____ after _____ years)(that the actuarial annual premium cost is computed to be no more than $ _____ )
33  STRIKE AND COMPLETE AS APPLICABLE] . This contingency shall be deemed satisfied unless Buyer, no later than _____ days (after
34  acceptance)(prior to closing) STRIKE ONE] ("prior to closing" if neither is stricken), delivers to Seller written notice indicating that this contingency
35  has not been satisfied and documentation of the flood insurance premiums available to Buyer. If this contingency is not satisfied, Buyer may
36  terminate this Offer by delivering written notice of termination to Seller.
37  [ ] **MAP OF THE PROPERTY:** This Offer is contingent upon (Buyer obtaining) (Seller providing) STRIKE ONE] ("Seller providing" if neither is
38  stricken) a (survey map)( ALTA/ACSM Land Title Survey) ( _____ ) STRIKE AND COMPLETE AS APPLICABLE] of the
39  Property, dated after the date of acceptance of this Offer and prepared by a Wisconsin licensed land surveyor, within _____ days of
40  acceptance, at (Buyer's) (Seller's) STRIKE ONE] ("Seller's" if neither is stricken) expense. The map shall identify the legal description of the
41  Property, Property boundaries and boundary line dimensions, visible encroachments, location of any improvements, a minimum of _____
42  acres, a maximum of _____ acres and: _____
43  STRIKE AND COMPLETE AS APPLICABLE] (Additional specifications/features may include, but are not limited to: locating Property corners,
44  streets, length of street or water frontage, legal access, total acreage or square footage, utility installations, easements or rights-of-way.
45  CAUTION: Consider cost and need for map features, and time required to obtain map.) This contingency shall be deemed satisfied unless
46  Buyer, within 5 days of the earlier of Buyer's Actual Receipt of the map or the deadline for delivery of said map, delivers to Seller a copy of the
47  map and a written notice which identifies: (1) a significant encroachment; (2) information materially inconsistent with prior representations or (3)
48  failure to meet requirements stated in this contingency. Upon delivery of Buyer's notice, this offer shall be null and void. This Offer shall be null
49  and void if Buyer delivers written notice to Seller, within 5 days of the deadline on lines 39-40, stating Seller failed to timely deliver the map (if
50  Seller was responsible to provide the map).
51  [ ] **FEDERAL VA MORTGAGE:** (Buyer)(Seller) STRIKE ONE] ("Seller" if neither is stricken) agrees to pay the entire funding fee not to
52  exceed _____ % (0% if not filled in) of the mortgage amount. **Note:** Funding fee may not be divided between the parties. Buyer agrees to
53  pay all other costs of securing financing.
54  [ ] **SELLER'S CONTRIBUTION:** Seller shall give Buyer a loan cost credit at closing in the amount of $ _____ or _____ % of the
55  purchase price to assist Buyer in paying loan closing costs such as points, prepayables and escrows. Buyer's loan costs shall include
56  _____ and exclude _____ STRIKE AND COMPLETE AS APPLICABLE] .
57  ■ **NUMBER OF DAYS:** The default number of days is 21 if nothing is entered on blank lines requiring entry of a number of days.
58  ■ **READING/UNDERSTANDING:** By initialing and dating this Addendum, each Party acknowledges they have received and carefully read all
59  pages of this Addendum. Initialing does not signify acceptance or agreement with the terms of this Addendum.
60  (X) _____  12-16-14 (X) _____ SR  12/19/14
61  (Buyer(s)' Initials) ▲  (Date) ▲  (Seller(s)' Initials) ▲  (Date) ▲

62 ■ CONTINGENCY SATISFACTION/RIGHT TO CURE (radon or testing contingency): The contingency shall 62 be deemed satisfied
63 unless Buyer, within 5 days of the earlier of: 1) Buyer's Actual Receipt of the applicable testing report(s) or 2) the deadline for delivery
64 of said report(s), delivers to Seller a copy of the written report(s) and written notice stating why the report(s) do(es) not satisfy the
65 contingency standard. If Seller has the right to cure, Seller may satisfy this contingency by (1) delivering a written notice of Seller's
66 election to cure within 10 days of receipt of Buyer's notice; and (2) by curing the defects in a good and workmanlike manner that
67 satisfies the standard set forth in the selected contingency by giving Buyer a report of the work done prior to closing. This Offer
68 shall be null and void if Buyer timely delivers the above written notice(s) and report(s) to Seller and (1) Seller does not have the right
69 to cure; or (2) Seller has a right to cure but: a) Seller delivers written notice that Seller will not cure or b) Seller does not timely deliver
70 the notice of election to cure. This Offer shall be null and void if Buyer delivers notice to Seller, within 5 days of the delivery deadline,
71 stating Seller failed to deliver report(s) by the respective stated deadline (if Seller was responsible to provide the report(s)].
72 ■ INSPECTIONS, TESTS AND OPINIONS: It is recommended that Buyer have the Property and specific Property
73 components of concern inspected by a Wisconsin registered home inspector or qualified independent inspectors/experts.
74 Real estate agents in this transaction may furnish a list of qualified, independent inspectors and testers. Unless provided in writing,
75 no representation has been made as to the competency of these inspectors/testers. The Party responsible for obtaining an inspection
76 or test shall be solely responsible for determining the qualifications of the inspector and tester. If a broker orders any inspection or
77 test on behalf of a Party in this transaction, the Parties agree to hold the broker harmless for any damages or liability resulting from
78 the inspection or test, other than that caused by the broker's negligence or intentional wrongdoing.
79 ■ BUYER'S RESPONSIBILITY TO ASCERTAIN CONDITION OF THE PROPERTY: Buyer acknowledges that it is Buyer's
80 responsibility to confirm that the Property is in a condition that Buyer finds acceptable and accordingly has conducted such tests,
81 inspections, evaluations and independent inquiries as Buyer deems necessary. Buyer has relied upon Buyer's independent Property
82 inspection and tests; the statements, disclosures and representations contained in this Offer; Seller's property condition report (if
83 any); and any other written statements provided to Buyer. Buyer acknowledges that neither Seller nor any real estate agents have
84 made any representations concerning the Property or the transaction other than those provided in writing. Buyer has not requested
85 verification of accuracy of any Seller or third party statements, disclosures or representations unless specifically stated in this Offer.
86 ■ HAZARDOUS SUBSTANCES: The parties are aware that news media and other public information sources indicate that
87 asbestos, lead-based paint, lead in drinking water, unsafe levels of mold, radium, radon gas and other toxic substances and
88 chemicals within a structure or in soils or water supplies can cause serious health hazards. Past flooding, water intrusion, leaking or
89 excessive dampness may result in mold growth that may present health risks. Synthetic stucco and wood composite exterior house
90 siding have been associated with moisture and mold related problems. Seller represents that, to the best of Seller's knowledge, the
91 Property does not contain asbestos, lead-based paint, excessive moisture or water intrusions, abnormal or unsafe concentrations of
92 mold, radon gas, lead, radium or other toxic or harmful substances or chemicals, and that there has been no past flooding, water
93 intrusion, leaking or excessive moisture in the Property. See the caution at lines 3-5 and the testing contingencies in this Addendum.
94 ■ UNDERGROUND STORAGE TANKS AND BASEMENT FUEL OIL TANKS: Seller has no knowledge of any petroleum product
95 contamination on the Property. If there is an abandoned underground storage tank (UST) or basement or aboveground storage tank
96 (AST) on the Property, Seller shall, at least 5 days prior to closing, deliver to Buyer written confirmation that the tank and related
97 components have been closed in full conformance with current federal, state and local regulations. Seller's written confirmation shall
98 include a copy of any applicable contractor's report and any required Department of Agriculture, Trade and Consumer Protection
99 (DATCP) registration. Seller shall provide Buyer at least 5 days prior to closing with documentation confirming that any in-use UST,
100 AST or basement tank meets all current state and federal operating standards. Buyer shall notify DATCP of the change of ownership
101 of an in-use UST within 15 business days of closing. Visit http://datcp.wi.gov/Consumer/Hazardous_Materials_Storage_Tanks/.
102 ■ MUNICIPAL REPORT/CODE COMPLIANCE: Seller agrees to provide Buyer with written verification of paid real estate taxes,
103 current or planned special assessments and any unpaid municipal charges affecting the Property, if such a statement is available
104 from the municipality. A Certificate of Code Compliance, Occupancy Permit or similar government documentation also may be
105 required. These statements shall be provided by Seller at or before closing at Seller's expense, unless otherwise provided in writing.
106 ■ ZONING AND BUILDING RESTRICTIONS, COMPREHENSIVE PLANS AND NON-CONFORMING STRUCTURES: Municipal
107 zoning and building restrictions may affect use of the Property, and comprehensive plans may affect future use or value of the
108 Property by influencing future development in the municipality. Buyer is informed that some buildings are considered legal non-
109 conforming structures because they no longer conform to current dimensional zoning standards due to zoning standards and
110 ordinances enacted after the building was constructed. Buyer's ability to remodel, repair, replace or enlarge an existing non-
111 conforming structure may be regulated by the municipality. Buyer is encouraged to contact the appropriate municipal authorities
112 regarding zoning and building restrictions and comprehensive plans if these issues are material to Buyer's decision to purchase.
113 ■ INSURANCE ISSUES: Seller agrees to allow representatives of Buyer's insurance company reasonable access to the Property
114 upon advance notice for inspections relating to Buyer's homeowner's insurance application. The Parties are advised to contact their
115 insurance agents with questions regarding insurability and costs.
116 ■ FLOOD PLAINS/WETLANDS/SHORELAND: Buyer acknowledges that it is recommended that Buyer seek professional
117 assistance in interpreting any flood plain, wetlands and shoreland maps.
118 ■ FLOOD INSURANCE: Buyer's mortgage lender may require Buyer to purchase flood insurance in connection with the purchase of
119 the Property. The National Flood Insurance Program (NFIP) (https://www.floodsmart.gov/floodsmart/) provides for the availability of
120 flood insurance and establishes flood insurance premiums based on the risk of flooding. Recent changes to federal law may result in
121 flood insurance premiums that are likely higher, and in the future may be substantially higher, than premiums paid by Seller. Buyer
122 should consult with one or more flood insurance carriers regarding flood insurance coverage, current and future premiums, and
123 whether Buyer may assume Seller's policy. Buyer may wish to contact NFIP for information about flood insurance for this Property.
124 ■ FEDERAL VA AND FHA MORTGAGE: If this Offer is contingent upon Buyer obtaining a FHA or Federal VA loan, it is also
125 contingent upon the Parties executing an FHA or Federal VA amendment to the contract which shall give Buyer the right to terminate
126 the Offer if the Property fails to appraise for the purchase price.
127 ■ MUNICIPALITY DISCREPANCY: Buyer acknowledges that while the Property mailing address may be within one municipality, the
128 Property may be physically located in an adjoining municipality that will determine the applicable property taxes and school district.

Copyright © 2014 by Wisconsin REALTORS® Association    Drafted by: Attorney Debra Peterson Conrad
No representation is made as to the legal validity of any provision or the adequacy of any provision in any specific transaction.
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Isenson/Obrien

## ADDENDUM D - ELECTRONIC DOCUMENT DELIVERY

1 This Addendum pertains to the (Offer to Purchase) ~~(Listing Contract) (Buyer Agency Agreement)~~
2 (Other [specify]: _____ ) the ("Form")
3 [STRIKE AND COMPLETE AS APPLICABLE] dated _____ **December 15, 2014** _____ , for a
4 transaction relative to the following Property: **120 E Clyde St, Holmen, WI 54636**
5 _____
6 [leave blank for a buyer agency agreement unless a specific property has been identified].

7 ▪ **E-MAIL DELIVERY:** The undersigned parties agree that the delivery standards and definitions
8 set forth in the Form are supplemented to add delivery of documents or written notices relating to
9 the Form by e-mail. E-mail delivery of documents and written notices is effective upon the
10 electronic transmission of the document or notice to the e-mail address specified below for the
11 party.

12 If this is a consumer transaction whereby the property being purchased is used primarily for
13 personal, family or household purposes, each consumer (buyer, seller, etc.) has consented
14 electronically to the use of electronic documents, e-mail delivery, and electronic signatures in the
15 transaction, as required by federal law.

16 Seller's Initials: _____ Electronic Consent Given: ☒ Yes
17 Seller's e-mail address for delivery of electronic documents: _____
18 _____

19 Buyer's Initials: _____ Electronic Consent Given: ☒ Yes
20 Buyer's e-mail address for delivery of electronic documents: terry@onlinecastles.com
21 _KellyI @ Zumbro MAC . oug_____

22 Listing Broker's Initials: _____
23 Listing Broker's e-mail address for delivery of electronic documents:
24 _____

25 Cooperating Broker's Initials: _____
26 Cooperating Broker's e-mail address for delivery of electronic documents:
27 **terry@onlinecastles.com**

Drafted by Attorney Debra Peterson Conrad; Copyright © 2008 by Wisconsin REALTORS® Association
No representation is made as to the legal validity of any provision or the adequacy of any provision in any specific transaction.

WISCONSIN REALTORS® ASSOCIATION
4801 Forest Run Road
Madison, Wisconsin 53704

**OFFER ADDENDUM S - LEAD BASED PAINT DISCLOSURES AND ACKNOWLEDGMENTS**

1 ■ **LEAD WARNING STATEMENT:** Every purchaser of any interest in residential real property on which a
2 residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from
3 lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in
4 young children may produce permanent neurological damage, including learning disabilities, reduced
5 intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular
6 risk to pregnant women. The seller of any interest in residential real property is required to provide the
7 buyer with any information on lead-based paint hazards from risk assessments or inspections in the
8 seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or
9 inspection for possible lead-based paint hazards is recommended prior to purchase.
10 Disclosures and Acknowledgments made with respect to the Property at _120 E Clyde ST_
11 _Edmund_ , Wisconsin.

12 ■ **SELLER DISCLOSURE AND CERTIFICATION.**    Note: See Seller Obligations at lines 27 - 54 and 55 - 112.
13 (1) SELLER DISCLOSURES: (a) Seller hereby represents that Seller has no knowledge of any lead-based paint or
14 lead-based paint hazards (collectively referred to as LBP) present in or on the Property except _have seen peel_
15 _to 1978 may contain LBP - none known_
16 (Explain the information known to Seller, including any additional information available about the basis for the determination
17 that LBP exists in or on the Property, the location of any LBP, and the condition of painted surfaces, or indicate "none.")
18 (b) Seller hereby confirms that Seller has provided the Buyer with the following records and reports which comprise all
19 of the reports and records available to Seller pertaining to lead-based paint and lead-based paint hazards (LBP) in or on the Property:
20 _____
21 _____ (Identify the LBP record(s) and report(s) (e.g. LBP abatements,
22 inspections, reductions, risk assessments, etc., as defined at lines 89 - 107) provided to Buyer or indicate "none available.")
23 (2) SELLER CERTIFICATION: The undersigned Seller has reviewed the information above and certifies to the best of their
24 knowledge, that the information provided by them is true and accurate

25 (ALL Sellers signature(es) ▲  Print Names Here ▶                          10-20-14  (Date) ▲
26
27 **Seller Obligations under the Federal Lead-Based Paint Disclosure Rules**
28 (Based upon 40 CFR Chapter 1, Part 745, Subpart F, §§745.103, 745.107, 745.110, 745.113 & 745.115, and 24 CFR subtitle A,
29 Part 35 Subpart H, §§35.86, 35.88, 35.90, 35.92 & 35.94 which all are collectively referred to in this Addendum as Federal LBP Law.)
30 DISCLOSURE REQUIREMENTS FOR SELLERS. (a) The following activities shall be completed before the Buyer is obligated
31 under any contract to purchase target housing that is not otherwise an exempt transaction pursuant to Federal Law. Nothing in this
32 section implies a positive obligation on the Seller to conduct any risk assessment and/or inspection or any reduction activities
33 (1) Provide LBP Pamphlet to Buyer. The Seller shall provide the Buyer with an EPA-approved lead hazard information
34 pamphlet. Such pamphlets include the EPA document entitled Protect Your Family From Lead In Your Home (EPA
35 #747-K-99-001) or an equivalent pamphlet that has been approved for use in this state by EPA
36 (2) Disclosure of Known LBP to Buyer. The Seller shall disclose to the Buyer the presence of any known lead-based
37 paint and/or lead-based paint hazards in the target housing being sold. The Seller shall also disclose any additional
38 information available concerning the known lead-based paint and/or lead-based paint hazards such as the basis for the
39 determination that lead-based paint and/or lead-based paint hazards exist, the location of lead-based paint and/or lead-based
40 paint hazards, and the condition of painted surfaces (chipping, cracked, peeling).
41 (3) Disclosure of Known LBP & LBP Records to Agent. The Seller shall disclose to each agent the presence of any
42 known lead-based paint and/or lead-based paint hazards in the target housing being sold and the existence of any available
43 records or reports pertaining to lead-based paint and/or lead-based paint hazards. The Seller shall also disclose any
44 additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis
45 for the determination that lead-based paint and/or lead-based paint hazards exist, the location of lead-based paint and/or
46 lead-based paint hazards, and the condition of the painted surfaces (chipping, cracked, peeling).
47 (4) Provision of Available LBP Records & Reports to Buyer. The Seller shall provide the Buyer with any records or reports
48 available (see line 88) to the Seller pertaining to lead-based paint and/or lead-based paint hazards in the target housing being sold.
49 This requirement includes records or reports regarding common areas. This requirement also includes records or reports
50 regarding other residential dwellings in multifamily target housing provided that such information is part of a risk assessment and/or
51 inspection or a reduction of lead-based paint and/or lead-based paint hazards in the target housing as a whole
52 (b) Disclosure Prior to Acceptance of Offer. If any of the disclosure activities identified in lines 30-51 occurs after the Buyer
53 has provided an offer to purchase the housing, the Seller shall complete the required disclosure activities prior to accepting
54 the Buyer's offer and allow the Buyer an opportunity to review the information and possibly amend the offer

55 ■ **CERTIFICATION AND ACKNOWLEDGMENT OF LBP DISCLOSURE.** (a) *Seller requirements.* Each contract to sell target
56 housing shall include an attachment or addendum containing the following elements, in the language of the contract (e.g. English,
57 Spanish):

58 (1) *Lead Warning Statement.* A Lead Warning Statement consisting of the following language:
59 Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified
60 that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead
61 poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities,
62 reduced intelligence quotient, behavorial problems, and impaired memory. Lead poisoning also poses a particular risk to
63 pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on
64 lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the buyer of any known
65 lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to
66 purchase.

67 (2) *Disclosure of Known LBP & LBP Information Re. the Property.* A statement by the Seller disclosing the presence of
68 known lead-based paint and/or lead-based paint hazards in the target housing being sold or indicating no knowledge of the
69 presence of lead-based paint and/or lead-based paint hazards. The Seller shall also provide any additional information
70 available concerning the known lead-based paint and/or lead-based paint hazards. such as the basis for the determination
71 that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint
72 hazards, and the condition of the painted surfaces (chipping, cracked, peeling, dust, etc.).

73 (3) *List of Available LBP Records & Reports Provided to Buyer.* A list of any records or reports available to the Seller
74 pertaining to lead-based paint and/or lead-based paint hazards in the housing that have been provided to the Buyer. If no
75 such records or reports are available, the Seller shall so indicate.

76 (4) *Buyer Acknowledgment of Receipt of Disclosures, Records & Pamphlet.* A statement by the Buyer affirming receipt
77 of the information set out in lines 67 - 75 and a lead hazard information pamphlet approved by EPA.

78 (5) *Buyer Acknowledgment of Receipt of Opportunity for LBP Inspection.* A statement by the Buyer that he or she has either
79 (i) received the opportunity to conduct the risk assessment or inspection required per lines 123 - 127; or (ii) waived the opportunity

80 (6) *Agent Certification.* When one or more real estate agents are involved in the transaction to sell target housing,
81 a statement from each agent that (i) The agent has informed the Seller of the Seller's obligations under
82 Federal LBP Law, and (ii) the agent is aware of his or her duty to ensure compliance with Federal LBP Law. Agents ensure
83 compliance by informing Seller of his or her obligations and by making sure that the Seller or the agent personally completes
84 the required activities. Buyer's agents paid solely by Buyer are exempt.

85 (7) *Signatures.* The signatures of all Sellers and Buyers, and all agents subject to Federal LBP Law (see lines 80 - 84)
86 certifying to the accuracy of their statements to the best of their knowledge, along with the dates of the signatures.

87 ■ **DEFINITIONS:**

88 *Available* means in the possession of or reasonably obtainable by the Seller at the time of the disclosure

89 *Abatement* means the permanent elimination of lead-based paint and/or lead-based paint hazards by methods such as
90 removing, replacing, encapsulating, containing, sealing or enclosing lead-based paint with special materials, in conformance
91 with any applicable legal requirements

92 *Buyer* means one or more individuals or entities who enter into a contract to purchase an interest in target housing **(referred**
93 **to in the singular whether one or more).**

94 *Inspection* means: (1) a surface-by-surface investigation to determine the presence of lead-based paint, and (2) the provision
95 of a report explaining the results of the investigation

96 *Lead-based paint* means paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square
97 centimeter or 0.5 percent by weight.

98 *Lead-based paint hazard* means any condition that causes exposure to lead from lead-contaminated dust, lead-contaminated
99 soil, or lead-contaminated paint that is deteriorated or present in accessible surfaces, friction surfaces or impact surfaces
100 that would result in adverse human health effects as established by the appropriate Federal agency

101 *Reduction* means designed to reduce or eliminate human exposure to lead-based paint hazards through interim controls,
102 abatement, etc

103 *Risk assessment* means an on-site investigation to determine and report the presence of lead-based paint, and to evaluate
104 and report the extent, nature, severity, and location of lead-based paint hazards in residential dwellings, including: (1)
105 information gathering regarding the age and history of the housing and occupancy by children under 6; (2) visual inspection,
106 (3); limited wipe sampling or other environmental sampling techniques; (4) other activity as may be appropriate, and (5)
107 provision of a report explaining the results of the investigation

108 *Seller* means one or more individuals or entities who transfer, in return for consideration, (1) legal title to target housing, in
109 whole or in part; (2) shares in a cooperatively owned project; or (3) an interest in a leasehold **(referred to in the singular**
110 **whether one or more).**

111 *Target housing* means any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless
112 any child who is less than 6 years of age resides or is expected to reside in such housing) or any 0-bedroom dwelling.

Produced with ZipForm® by ziplogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.ziplogix.com

113 ■ AGENT(S) ACKNOWLEDGMENT AND CERTIFICATION.
114 (1) ACKNOWLEDGMENT: All agent(s) in this transaction subject to Federal LBP Law (see lines 80 - 84) hereby
115 acknowledge that (1) the Seller was informed of his or her obligations under the Federal LBP Law (see lines 27 - 54 and 55 -
116 112), and (2) they are aware of their duty to ensure compliance with the requirements of Federal LBP Law.
117 (2) CERTIFICATION: The undersigned agents have reviewed the information above and certify, to the best of their
118 knowledge, that the information provided by them is true and accurate

119 (X) _____ _____ __/__/____
120 (Agent's signature) ▲ Print Agent & Firm Names Here ►                                    (Date) ▲

121 (X) _____ Terry Schmidt  Castle Realty, LLC      12-16-14
122 (Agent's signature) ▲ Print Agent & Firm Names Here ►                                    (Date) ▲

123 ■ BUYER'S OPPORTUNITY TO CONDUCT AN EVALUATION (LBP Inspection Contingency) (a) Before a Buyer is
124 obligated under any contract to purchase target housing, the Seller shall permit the Buyer a 10-day period (unless the parties
125 mutually agree, in writing, upon a different period of time) to conduct a risk assessment or inspection for the presence of
126 lead-based paint and/or lead-based paint hazards (b) Not withstanding lines 123 - 126, a Buyer may waive the opportunity
127 to conduct the risk assessment or inspection by so indicating in writing

128 ■ BUYER INSPECTION CONTINGENCY, ACKNOWLEDGMENT AND CERTIFICATION.
129 (1) LEAD-BASED PAINT INSPECTION CONTINGENCY: [Buyer to check one box at lines 131, 147 or 148  if no box is
130 checked, Buyer is deemed to have elected a 10-day contingency per lines 131 - 146 ]
131 ☐ LEAD-BASED PAINT INSPECTION CONTINGENCY: This Offer is contingent upon a federal or state certified lead
132 inspector or lead risk assessor conducting an inspection or risk assessment of the Property, at Buyer's cost, which discloses
133 no lead-based paint and/or lead-based paint hazards (see lines 96 - 100) (collectively referred to as LBP) This contingency
134 shall be deemed satisfied, and Buyer will have elected to take the Property "as is" with respect to LBP, unless Buyer, within
135 _____ days of acceptance, delivers to Seller a copy of the inspector's or risk assessor's written report and a written notice
136 listing the LBP identified in the report to which the Buyer objects  Buyer agrees to concurrently deliver a copy of the report
137 and notice to the listing broker, if any  A proposed amendment will not satisfy this notice requirement.
138 RIGHT TO CURE.  Seller (shall)(shall not) [ STRIKE ONE ] have a right to cure (if neither struck, Seller shall have the right to
139 cure)  If Seller has the right to cure, Seller may satisfy this contingency by (1) delivering within 10 days of receipt of Buyer's
140 notice, written notice of Seller's election to abate the LBP identified by the Buyer, and (2) providing Buyer, no later than 3 days
141 prior to closing, with certification from a certified lead supervisor or project designer, or other certified lead contractor that
142 the identified LBP has been abated  This Offer shall be null and void if Buyer makes timely delivery of the above notice and
143 report and (1) Seller does not have a right to cure or (2) Seller has a right to cure but a) Seller delivers notice that Seller will
144 not cure or b) Seller does not timely deliver the notice of election to cure "Abate" shall mean to permanently eliminate the
145 identified LBP by methods such as removing, replacing, encapsulating, containing, sealing or enclosing the identified LBP,
146 in conformance with the requirements of all applicable law.
147 ☐ Buyer elects the LBP contingency Buyer has attached to this Addendum S
148 ☒ Buyer waives the opportunity for a LBP inspection or assessment

149 (2) BUYER ACKNOWLEDGMENT: Buyer hereby acknowledges and certifies that Buyer has: (a) received the Seller's
150 above-listed disclosures, reports and records concerning any known LBP in or on the Property (see lines 12 - 22); (b) received
151 a lead hazard information pamphlet approved by the EPA, and (c) received the opportunity to conduct a LBP risk assessment
152 or inspection of the Property or has waived the opportunity (see lines 131 - 148 above)

153 (3) BUYER CERTIFICATION: The undersigned Buyer has reviewed the information above and certifies, to the best of their
154 knowledge, that the information provided by them is true and accurate

155 (X) _____ _____ 12-14-14
156 (ALL Buyers' signatures) ▲ Print Names Here ►                                    (Date) ▲
157

WISCONSIN REALTORS® ASSOCIATION
4801 Forest Run Road
Madison, Wisconsin 53704

## REAL ESTATE CONDITION REPORT

### DISCLAIMER

A. _____ THIS CONDITION REPORT CONCERNS THE REAL PROPERTY LOCATED AT ___120 E Clyde St___
_____ (STREET ADDRESS) IN THE ___Village___ (CITY/VILLAGE/TOWN) OF ___Holman___,
COUNTY OF ___La Crosse___, STATE OF WISCONSIN. THIS REPORT IS A DISCLOSURE OF THE CONDITION OF THAT PROPERTY
IN COMPLIANCE WITH SECTION 709.02 OF THE WISCONSIN STATUTES AS OF ___Oct___ (MONTH), ___20___ (DAY), ___2014___ (YEAR). IT
IS NOT A WARRANTY OF ANY KIND BY THE OWNER OR ANY AGENTS REPRESENTING ANY PRINCIPAL IN THIS TRANSACTION AND IS NOT A
SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PRINCIPALS MAY WISH TO OBTAIN.

### OWNER'S INFORMATION

B.1.  In this form, "am aware" means to have notice or knowledge. In this form, "defect" means a condition that would have a significant adverse effect on the value of the property; that would significantly impair the health or safety of future occupants of the property; or that if not repaired, removed or replaced would significantly shorten or adversely affect the expected normal life of the premises.

B.2.  The owner discloses the following information with the knowledge that, even though this is not a warranty, prospective buyers may rely on this information in deciding whether and on what terms to purchase the property. The owner hereby authorizes any agent representing any principal in this transaction to provide a copy of this statement, and to disclose any information in the statement, to any person in connection with any actual or anticipated sale of the property.

B.3.  The owner represents that to the best of his or her knowledge the responses to the following statements have been accurately noted as "yes," "no," or "not applicable" to the property being sold. If the owner responds to any statement with "yes," the owner shall provide, in the additional information area of this form, an explanation of the reason why the response to the statement is "yes."

B.4.  If the transfer is of a condominium unit, the property to which this form applies is the condominium unit, the common elements of the condominium and any limited common elements that may be used only by the owner of the condominium unit being transferred.

### PROPERTY CONDITION STATEMENTS*

| | Yes | No | N/A | See Expert's Report |
|---|---|---|---|---|
| C.1. I am aware of defects in the roof. | | X | | |
| C.2. I am aware of defects in the electrical system. | | X | | |
| C.3. I am aware of defects in part of the plumbing system (including the water heater, water softener and swimming pool) that is included in the sale. | | X | | |
| C.4. I am aware of defects in the heating and air conditioning system (including the air filters and humidifiers). | | X | | |
| C.5. I am aware of defects in the well, including unsafe well water. | | X | | |
| C.6. I am aware that this property is served by a joint well. | | X | | |
| C.7. I am aware of defects in the septic system or other sanitary disposal system. | | X | | |
| C.8. I am aware of underground or aboveground fuel storage tanks on or *previously located* on the property. (If "yes," the owner, by law, may have to register the tanks with the Wisconsin Department of Agriculture, Trade and Consumer Protection at P.O. Box 8911, Madison, Wisconsin, 53708, whether the tanks are in use or not. Regulations of the Wisconsin Department of Agriculture, Trade and Consumer Protection may require the closure or removal of unused tanks.) | | X | | |
| C.9. I am aware of an "LP" tank on the property. (If "yes," specify in the additional information space whether or not the owner of the property either owns or leases the tank.) | | X | | |
| C.9m. I am aware that a dam is totally or partially located on the property or that an ownership in a dam that is not located on the property will be transferred with the property because it is owned collectively by members of a homeowners association, lake district, or similar group. (If "yes," contact the Wisconsin Department of Natural Resources to find out if dam transfer requirements or agency orders apply.) | | X | | |
| C.10. I am aware of defects in the basement or foundation (including cracks, seepage and bulges). Other basement defects might include, but are not limited to, flooding, extreme dampness or wet walls, unsafe concentrations of mold, or defects in drain tiling or sump pumps. | X | | | |
| C.11. I am aware that the property is located in a floodplain, wetland or shoreland zoning area. | X | X | | |
| C.12. I am aware of defects in the structure of the property. | | X | | |
| C.13. I am aware of defects in mechanical equipment included in the sale either as fixtures or personal property. | | X | | |
| C.14. I am aware of boundary or lot line disputes, encroachments or encumbrances (including a joint driveway). | | X | | |
| C.15. I am aware of a defect caused by unsafe concentrations of, or unsafe conditions relating to, radon, radium in water supplies, high voltage electric (100 KV or greater) or steel natural gas transmission lines located on but not directly serving the property, lead in paint, lead in soil, lead in water supplies or plumbing system or other potentially hazardous or toxic substances on the premises. Such defects might also be caused by unsafe levels of mold. NOTE: specific federal lead paint disclosure requirements must be complied with in the sale of most residential properties built before 1978. | | X | | |
| C.16. I am aware of the presence of asbestos or asbestos-containing materials on the premises. | | X | | |
| C.17. I am aware of a defect caused by unsafe concentrations of, unsafe conditions relating to, or the storage of, hazardous or toxic substances on neighboring properties. | | X | | |
| C.18. I am aware of current or previous termite, powder-post beetle or carpenter ant infestations or defects caused by animal or other insect infestations | X | | | |
| C.19. I am aware of defects in a woodburning stove or fireplace or of defects caused by a fire in a stove or fireplace or elsewhere on the property or a violation of applicable state or local smoke detector laws; NOTE: State law requires operating smoke detectors on all levels of all residential properties, and operating carbon monoxide detectors on all levels of most residential properties (see Wis. Stat. §§ 101.149 & 101.647). | | X | | SEE NOTE |
| C.20. I am aware either that remodeling affecting the property's structure or mechanical systems was done or that additions to this property were made during my period of ownership without the required permits. | | X | | |
| C.21. I am aware of federal, state or local regulations requiring repairs, alterations or corrections of an existing condition. | | X | | |

RE/MAX First Choice,3219 State Road La Crosse,WI 54601

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

| | Yes | No | N/A | See Expert's Report |
|---|---|---|---|---|

C.22. I have received notice of property tax increases, other than normal annual increases, or am aware of a pending property reassessment. — ✗ — —

C.23. I am aware that remodeling that may increase the property's assessed value was done. — ✗ — —

C.24. I am aware of proposed or pending special assessments. — ✗ — —

C.24.m I am aware that the property is located within a special purpose district, such as a drainage district, that has the authority to impose assessments against the real property located within the district. — ✗ — —

C.25. I am aware of the proposed construction of a public project that may affect the use of the property. — ✗ — —

C.26. I am aware of subdivision homeowners' associations, common areas co-owned with others, zoning violations or nonconforming uses, any land division involving the property for which required state or local permits had not been obtained, conservation easements, restrictive covenants, rights-of-way, easements or another use of a part of the property by nonowners, other than recorded utility easements or burial grounds. — ✗ — —

C.26.m I am aware that the property is subject to a mitigation plan required under administrative rules of the department of natural resources related to county shoreland zoning ordinances, which obligates the owner of the property to establish or maintain certain measures related to shoreland conditions and which is enforceable by the county. — ✗ — —

C.27. I am aware of other defects affecting the property. — ✗ — —

**ADDITIONAL INFORMATION**

D.1. I am aware that a structure on the property is designated as a historic building or that part of the property is in a historic district. — — — —

D.1.a I am aware of a pier attached to the property that is not in compliance with state or local pier regulations. See http://dnr.wi.gov/ for information. — — — —

D.1.b All or part of the land has been assessed as agricultural land under Wis. Stat. § 70.32(2r) (use-value assessment). — — — —

D.1.c The owner has been assessed a use-value assessment conversion charge under Wis. Stat. § 74.485(2). — — — —

D.1.d The payment of the use-value assessment conversion charge has been deferred under Wis. Stat. § 74.485(4). — — — —
Notice: The use value assessment system values agricultural land based on the income that would be generated from its rental for agricultural use rather than its fair market value. When a person converts agricultural land to a non-agricultural use (e.g. residential or commercial development), that person may owe a conversion charge. To obtain more information about the use value law or conversion charge, contact the Wisconsin Department of Revenue's Equalization Section at 608-266-2149 or visit http://www.revenue.wi.gov/faqs/slf/useassmt.html.

D.1.e I am aware that the property is subject to a farmland preservation agreement. — — — —
Notice: The early termination of a farmland preservation agreement or removal of land from such an agreement can trigger payment of a conversion fee equal to 3 times the class 1 "use value" of the land. Call 608-224-4500 or visit http://datcp.wi.gov/Environment/Working_Lands_Initiative/ for more information.

D.1.f I am aware of the presence of unsafe levels of mold, or roof, basement, window or plumbing leaks, or overflow from sinks, bathtubs or sewers, or other water or moisture intrusions or conditions that might initiate the growth of unsafe levels of mold. — — — —

D.1.g I am aware that all, or part, of the property is subject to, enrolled in or in violation of a Farmland Preservation Agreement (see D.1.e.), Forest Crop Law, Managed Forest Law (see disclosure requirement in Wis. Stat. § 710.12), the Conservation Reserve Program or a comparable program. — — — —

D.2. The owner has lived on the property for ~2.5~ years.  *N.ONE IF EAVES/SPOUTS MAINTAINED*

D.3. Explanation of "yes" responses. (See B.3) *C.10: Minor seepage in basement corners.*
*Fireplace Fans original - unknown if they are still working*

Note: Any sales contract provision requiring the inspection of a residential dumbwaiter or elevator must be performed by a state-licensed elevator inspector.
Notice: You may obtain information about the sex offender registry and persons registered with the registry by contacting the Wisconsin Department of Corrections on the Internet at http://www.wideoffenders.org or by phone at 608-240-5830.

**OWNER'S CERTIFICATION**

E. The owner certifies that the information in this report is true and correct to the best of the owner's knowledge as of the date on which the owner signs this report. NOTE: Wisconsin Statute §709.035 requires owners who, prior to acceptance, obtain information which would change a response on this report, to submit a new report or an amended report to the prospective buyer.

Owner ___ Date 10/20/14   Owner ___ Date ___
Owner ___ Date 10/20/14   Owner ___ Date ___

**CERTIFICATION BY PERSON SUPPLYING INFORMATION**

F. A person other than the owner certifies that he or she has supplied information on which the owner relied for this report and that information is true and correct to the best of that person's knowledge as of the date on which the person signs this report.

Person ___ Items ___ Date ___ Person ___ Items ___ Date ___
Person ___ Items ___ Date ___ Person ___ Items ___ Date ___

**NOTICE REGARDING ADVICE OR INSPECTIONS**

G. THE PROSPECTIVE BUYER AND THE OWNER MAY WISH TO OBTAIN PROFESSIONAL ADVICE OR INSPECTIONS OF THE PROPERTY AND TO PROVIDE FOR APPROPRIATE PROVISIONS IN A CONTRACT BETWEEN THEM WITH RESPECT TO ANY ADVICE, INSPECTIONS, DEFECTS OR WARRANTIES.

**BUYER'S ACKNOWLEDGMENT**

H.1. THE PROSPECTIVE BUYER ACKNOWLEDGES THAT TECHNICAL KNOWLEDGE SUCH AS THAT ACQUIRED BY PROFESSIONAL INSPECTORS MAY BE REQUIRED TO DETECT CERTAIN DEFECTS SUCH AS THE PRESENCE OF ASBESTOS, BUILDING CODE VIOLATIONS AND FLOODPLAIN STATUS.

H.2. I ACKNOWLEDGE RECEIPT OF A COPY OF THIS STATEMENT.

Prospective Buyer ___ Date 12/1/14 Prospective Buyer ___ Date ___
Prospective Buyer ___ Date ___ Prospective Buyer ___ Date ___

*NOTE: All information appearing in italics in this REAL ESTATE CONDITION REPORT is purely of a supplemental nature and is not required pursuant to Section 709.03 of the Wisconsin Statutes. No representation is made as to the legal validity of any provision or the adequacy of any provision in any specific transaction.*
Copyright © 2014 by Wisconsin REALTORS® Association  Drafted by: Attorney Debra Peterson Conrad
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.ziplogix.com

# PROPERTY HISTORY

The following information supplements the attached Seller's Condition Report for this property located at:

120 Clyde Street E, Holmen

| | Items of Interest | Last Serviced By Whom? |
|---|---|---|
| Age of Home | 1944 | |
| Age of Roof | 4 | American Roofing |
| Age of Furnace | 14 - Boiler | Schneider Heating |
| Age of Central Air | | |
| Age of Water Heater | 2 | Schneider Heating |
| Age of Softener? | 2 | Culligan |
| Septic pumped how often? | | |
| Is Water Softener rented? | (Y) N | Culligan |
| Any roof repairs by you/previous owners? | Y (N) | |
| Have you upgraded the electrical system? | (Y) N | Previous Owner |
| Any Leaking, cracked or broken windows? | Y (N) | |
| Do all windows open? | (Y) N | |
| Has sewer line ever been cleaned out or broken and been repaired? | (Y) N | At family Plumbing |
| Have you ever paid/or been required to have flood insurance on this property? | Y (N) | |
| Has the property ever been damaged by fire? | Y (N) | |
| Is anything on the on the property not connected to the septic that should be? | Y (N) | |
| Can you provide a copy of a previous Seller's Property Condition Report? | Y (N) | |
| Has insulation been added? | (Y) N | Cuolee Cap Blown |

Are there keys for all doors and locks?   Y   N   _____

Any water in basement?   (Y)   N   HOME OWNER

X dampness/Wet  ___ backup through floor drain   X from improper landscaping
___ from window well   ___ Other, please specify   be Maintained
                        CAVEd   NTUSot
                        CORNERS   OF HOUSE

Any problems with built-in appliances?   N o
___ Stove              ___ Range Hood        ___ Disposal
___ Dishwasher         ___ Refrigerator      ___ Freezer
___ Softener           ___ Ceiling Fans      ___ Window Air
___ Oven               ___ Microwave         ___ Trash Compactor
___ Satellite or Dish Components

When building fences, garage, or placing storage units or other permanent improvements, what was used to locate these improvements?
___ Location report        ___ Survey        ___ Other (please specify below)
                                              No Building Construction

Other information (Warranty info, special construction materials, extra technology, controls, etc):

Stair Chamber   Ramp
_____
_____
_____
_____
_____

*The information contained in this report is true and correct to the best of my knowledge.*

X _____   10-21-14   X Kathleen Rapier   10-21-14
Signed            Date              Signed              Date

*With my signature, I acknowledge receipt of a copy of this report:*

Kelly Gruver   12-16-14   _____
Signed         Date        Signed              Date



# EARNEST MONEY FORM

**RE/MAX First Choice     757 Sand Lake Rd      Onalaska, WI  54650**

Property Address:  ___120 E Clyde St___

Date:  ___1/6/15___

Date office received:  ___1/6/15___

Amount:  $  ___500.00___

Seller:  ___Rapraeger___

Listing Agent:  ___John S___     Company  ___REMAX First Choice___

Buyer:  ~~O'Brien~~ Kelly Marie Tsensee

Selling Agent:  ___Terry S___     Company  ___Castle___

---

EDWARD J O'BRIEN  06/14
1747 ROSE ST. NBR 31
LA CROSSE, WI 54603

79-8121
2910

1141

DATE **1/3/15**

PAY TO
THE ORDER OF  Re Max Trust Fund   | $ **500.**<u>00</u>

_Five hundred dollars_ ～ / DOLLARS

**Altra**
Federal Credit Union
608-715-0035 • www.altra.org

MEMO _Earnest Money_         _Ed O'B_         MP

Part of Block 3 of North Side Addition to the Village of Holmen, La Crosse County, Wisconsin, described as follows: Commencing at an iron pipe in the Northwest corner of said Block 3, being the intersection of the West line of said Block 3 with the South line of Clyde Street; thence along the South line of Clyde Street South 72 degrees 33 minutes East 112.5 feet; thence South 17 degrees 57 minutes West 239 feet; thence North 72 degrees 33 minutes West 35 feet to the West line of said Block 3; thence North along the West line of said Block 3 a distance of 241 feet to the point of beginning.

Part of Lot 3 in Block 4 of North Side Addition to the Village of Holmen, La Crosse County, Wisconsin, described as follows: Beginning at the Northeast corner of said Lot 3 in Block 4; thence Westerly 14 feet along the North line of said Lot 3; thence Southwesterly along a concrete gutter to the Northeast corner of Lot 2 of said Block 4; thence Southwesterly 50 feet along the East line of said Lot 2 to the North line of Lot 1 in said Block 4; thence in an Easterly direction along the North line of said Lot 1 to the East line of said Lot 3; thence North 190 feet along the East line of said Lot 3 to the place of beginning.

120 Clyde St. E
(Tax Parcel No. 14-616-000)

#2

**Chicago Title Insurance Company**

115033T

## COMMITMENT FOR TITLE INSURANCE

### Issued by

### Chicago Title Insurance Company

*Chicago Title Insurance Company, a Nebraska corporation ("Company "), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.*

*This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.*

*All liability and obligation under this Commitment shall cease and terminate 6 months after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.*

*The Company will provide a sample of the policy form upon request.*

*IN WITNESS WHEREOF, Chicago Title Insurance Company has caused its corporate name and seal to be affixed by its duly authorized officers on the date shown in Schedule A.*

# 3

WI2076      115033T
The Title Company, Inc
500 Second Street S., Suite 102
PO Box 578
La Crosse, WI 54602-0578
608-791-2000
Fax 608-791-2015

Countersigned: *Teresa Callaway*

Authorized Signatory

CHICAGO TITLE INSURANCE COMPANY

By:

President

ATTEST

Secretary

**CONDITIONS**

1.     The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2.     If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions.

3.     Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4.     This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title. Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5.     *The policy to be issued contains an arbitration clause. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. You may review a copy of the arbitration rules at <http://www.alta.org/>.*

# SCHEDULE A

**Prepared for:**
*Altra Federal Credit Union*
*Attn: Sarah Benzing*
*Re/Max First Choice (John Sheppard/Samantha Keck)*
*Castle Realty, LLC (Terry Schmidt)*
*Gull Legal, LLC  (Kala Wuensch)*

Underwritten by:
Chicago Title Insurance Company
601 Riverside Avenue
Jacksonville, Florida  32204

Issuing Agent:
The Title Company, Inc.
500 Second Street S., Suite 102
PO Box 578
La Crosse, WI  54602-0578

**File No:  115033T**

**Effective Date: January 12, 2015  8:00 am**

1.  **Policy (or Policies) to be issued:**

**ALTA OWNER'S POLICY (6/17/2006)**
    **Proposed Insured:**
    *Kelly Marie Isensee and Edward J. O'Brien*

**Amount:  $169,900.00**

**ALTA LOAN POLICY (6/17/2006)**
    **Proposed Insured:**
    *Altra Federal Credit Union, its successors and/or assigns*

**Amount:  $135,920.00**

2.  **Fee Simple interest in the land described or referred to in this Commitment is at the effective date hereof of record:**
    *Steven T. Rapraeger and Kathleen J. Rapraeger, husband and wife*

3.  **The land referred to in the Commitment is described as follows:**

*Part of Block 3 of North Side Addition to the Village of Holmen, La Crosse County, Wisconsin, described as follows: Commencing at an iron pipe in the Northwest corner of said Block 3, being the intersection of the West line of said Block 3 with the South line of Clyde Street; thence along the South line of Clyde Street South 72 degrees 33 minutes East 112.5 feet; thence South 17 degrees 57 minutes West 239 feet; thence North 72 degrees 33 minutes West 35 feet to the West line of said Block 3; thence North along the West line of said Block 3 a distance of 241 feet to the point of beginning.*

*Part of Lot 3 in Block 4 of North Side Addition to the Village of Holmen, La Crosse County, Wisconsin, described as follows: Beginning at the Northeast corner of said Lot 3 in Block 4; thence Westerly 14 feet along the North line of said Lot 3; thence Southwesterly along a concrete gutter to the Northeast corner of Lot 2 of said Block 4; thence Southwesterly 50 feet along the East line of said Lot 2 to the North line of Lot 1 in said Block 4; thence in an Easterly direction along the North line of said Lot 1 to the East line of said Lot 3; thence North 190 feet along the East line of said Lot 3 to the place of beginning.*

*120 Clyde St. E*
*(Tax Parcel No. 14-616-000)*

File No: **115033T**

## SCHEDULE B - I
### Requirements

**The following are the requirements to be complied with:**

(a) Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest to be insured.

(b) Payment to the Company of the premiums, fees and charges for the policy.

(c) Proper instrument(s) creating the estate or interest to be insured must be executed and duly filed for record to wit:

> 1.  *Deed from Steven T. Rapraeger and Kathleen J. Rapraeger, husband and wife to Kelly Marie Isensee and Edward J. O'Brien.*

> 2.  *Mortgage from Kelly Marie Isensee and Edward J. O'Brien to Altra Federal Credit Union, its successors and/or assigns.*

*The proposed mortgage should either designate the subject premises as non-homestead, identify the mortgagors as unmarried or be joined in by each of the mortgagors spouses.*

*If all of the net proceeds of the proposed mortgage are to be disbursed to the seller of the subject premises as part of the purchase price and said mortgage recites on the face thereof that it is a purchase money mortgage, the above requirement may be disregarded.*

Requirements for the deletion of the Standard Exceptions listed in attached Schedule B-II are found in Schedule C hereof.

This commitment is invalid unless the insuring
Provisions and Schedule A and B are attached.

File No:  **115033T**

**SCHEDULE B - SECTION II**
Exceptions

**The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:**

1.  *Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed Insured acquires for value of record the estate or interest mortgage thereon covered by this Commitment.*

2.  *Special taxes or assessments, if any, payable with taxes levied or to be levied for the current and subsequent years.*

3.  *Liens, hook-up charges or fees, deferred charges, reserve capacity assessments, impact fees, or other charges or fees due and payable on the development or improvement of the land, whether assessed or charged before or after the Date of Policy. The company assures the priority of the lien of the insured mortgage over any such lien, charge or fee.*

4.  *Any lien or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.*

5.  *Rights or claims of parties in possession not shown by the public records.*

6.  *Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.*

7.  *Easements or claims of easements not shown by the public records.*

8.  *Any claim of adverse possession or prescriptive easement.*

9.  *General and special taxes for the year 2014.*

10. *Easement, granted by Trygve G. Mathison and Karan K. Mathison to General Telephone of Wisconsin Company, its successors and assigns by an instrument dated November 1, 1969 and recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on November 18, 1969 in Volume 464 of Records, page 537 as Document No. 798647. A copy of which is attached hereto and made a part hereof by reference.*

    *Assignment and Assumption of Recorded Easements, Licenses and Right of Way Agreements dated September 29, 2000 and recorded in said Register's office on October 18, 2005 as Document No. 1434624. Partial copies of which are attached hereto and made a part hereof by reference.*

11. *Easement, granted by Trygve Mathison and Karen Mathison to General Telephone Company of Wisconsin, its successors and assigns by an instrument dated April 28, 1976 and recorded in said Register's Office on May 11, 1976 in Volume 574 of Records, page 322 as Document No. 857162. A copy of which is attached hereto and made a part hereof by reference.*

    *Assignment and Assumption of Recorded Easements, Licenses and Right of Way Agreements dated September 29, 2000 and recorded in said Register's office on October 18, 2005 as Document No.*

*1434624. Partial copies of which are attached hereto and made a part hereof by reference.*

12. *Security Agreement, according to the terms and provisions thereof, from Steven T. Rapraeger and Kathleen J. Rapraeger to WI Coulee Region Community Action Program, Inc., to extend credit and any other amount payable under the terms thereof, recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on March 30, 2000 in Volume 1370 of Records, page 944 as Document No. 1248321.*

   *By an instrument executed by Coulee Cap, Inc., dated September 20, 2006 and recorded in said Register's Office on November 29, 2006 as Document No. 1463474, it is agreed that the lien of the mortgage recorded as Document No. 1407958 described below is made paramount and prior in lien to mortgage recorded as Document No. 1248321.*

13. *Mortgage, according to the terms and provisions thereof, from Steven T. Rapraeger and Kathleen J. Rapraeger, husband and wife to Bank of Galesville, to secure the originally stated indebtedness of $70,000.00 and any other amount payable under the terms thereof, dated October 29, 2004 and recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on November 9, 2004 as Document No. 1407958.*

14. *An action to foreclose mortgage, according to the terms and provisions thereof from Steven Rapraeger and Kathleen Rapraeger, husband and wife to Associated Bank, N.A., to secure the originally stated indebtedness of $35,800.00, and any other amount payable under the terms thereof, dated January 18, 2006 and recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on February 15, 2006 as Document No. 1442754, with Lis Pendens, Case No. 2010CV001013 filed with the Register of Deeds on October 21, 2010 as Document No. 1561049, and is still pending and should be commenced and duly prosecuted to judgment, sale and confirmation of sale.*

15. *Mortgage, according to the terms and provisions thereof, from Steven T. Rapraeger and Kathleen J. Rapraeger to GMAC Mortgage Corporation DBA, to secure the originally stated indebtedness of $35,500.00 and any other amount payable under the terms thereof, dated June 30, 2006 and recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on August 2, 2006 as Document No. 1455199, in which mortgage was subsequently assigned by Mortgage Electronic Registration Systems, Inc., as designated nominee for GMAC Mortgage Corporation DBA Ditech.com, beneficiary of the security instrument, its successors and assigns, to The Bank of New York Mellon Trust Company, N.A., as Trustee for GMACM Home Equity Loan Trust 2006-HE3, its successors and assigns, by an instrument dated June 23, 2014 and recorded in said Register's Office on June 26, 2014, as Document No. 1641304.*

   *"This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns,) as beneficiary. MERS is organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888)679-MERS. GMAC Mortgage Corporation DBA ("Lender") is organized and existing under the laws of Commonwealth of Pennsylvania and has an address of 3200 Park Center Dr. Suite 150, Costa Mesa, CA 92626.*

   *MIN #100037506561177867.*

16. *Unpaid 2011 real estate taxes, in the sum of $486.75, exclusive of fee and interest.*

17. *Unpaid 2012 real estate taxes, in the sum of $4,687.67, exclusive of fee and interest.*

18. *Unpaid 2013 real estate taxes, in the sum of $4,054.87, exclusive of fee and interest.*

19. *Taxes and assessments, general or special, for the year 2014 unless a tax receipt showing full payment is presented.*

20. *There are no special assessments now a lien on the property. NOTE: The covered premises are subject to water, sewer and storm water utility charges. The exact amount of charges should be obtained from the City of LaCrosse immediately prior to settlement.*

*2014 TAX DATA: (Tax Parcel No. 14-616-000) General Tax $3,345.25 is not yet due and payable. (Lottery Credit $124.84) (First Dollar Credit $73.77)*

*It is to be understood that the owner's policy, when issued will contain as an additional exception, the mortgage called for on Schedule B - Section 1 of this commitment.*

*NOTE: Deeds recorded as Document numbers 1026776, 1636680, 1637136 and 11649607 are attached.*

## SCHEDULE C

**The following apply to the owner's policy to be issued:**

Exception 1 of Schedule B-II will be removed only if a gap endorsement is attached to this commitment and the requirements for the issuance of "gap" coverage as described in the endorsement are met, including the payment of the premium.

Exception 2 Schedule B-II will be removed only if the Company receives written evidence from the municipality that there are no special assessments against the Land, or that all such items have been paid in full.

Exception 3 of Schedule B-II will be removed only if the Company receives (1) written evidence from the municipality that there are no deferred charges, hookup fees, or other fees or charges attaching to the property; (2) evidence that the Land contains a completed building; and (3) a statement showing that the Land has a water and sewer use account. If the Land is vacant, this exception will not be removed.

Exception 4 of Schedule B-II will be removed only if the Company receives a Construction Work and Tenants Affidavit on a form prepared by the Company and the following is true:

No work done: The Affidavit must establish that there has been no lienable construction work in the previous six months.

Repair work done: If repair work has been done on an existing structure in the last six months, the Affidavit must accurately disclose all parties who have done lienable work in the last six months, and have attached to it original full waivers of lien from each person or company.

New construction: If the property contains a newly-built structure, the Affidavit must incorporate a complete list of all parties who have done lienable work in the last six months, and have attached to it original full waivers of lien from each person or company. If Exception 4 is removed, it may be replaced by the following exception: "Any construction lien claim by a party not shown on the Construction Work and Tenants Affidavit supplied to the Company."

Exception 5 of Schedule B-II will be removed only if the Company receives a Construction Work and Tenants Affidavit on a form prepared by the Company. If the affidavit shows that there are tenants, Exception 5 will be replaced by an exception for the rights of the tenants disclosed by the Affidavit.

Exceptions 6, 7 and 8 of Schedule B-II will be removed only if the Company receives an original survey which (i) has a current date, (ii) is satisfactory to the Company, and (iii) complies with current ALTA/ACSM Minimum Survey Standards or Wisconsin Administrative Code AE-7. If the survey shows matters which affect the title to the property, Exceptions 6, 7 and 8 will be replaced by exceptions describing those matters.

     This commitment is invalid unless the insuring Provisions and Schedule A and B are attached.

**The Title Company, Inc.**

**Privacy Statement**

The Title Company, Inc. ("The Company") respects the privacy and security of your non-public personal information ("Personal Information") and protecting your Personal Information is one of our top priorities. This Privacy Statement explains The Company's privacy practices, including how we use the Personal Information we receive from you and from other specified sources, and to whom it may be disclosed. The Company follows the privacy practices described in this Privacy Statement and, depending on the business performed, The Company may share information as described herein.

**Personal Information Collected**

We may collect Personal Information about you from the following sources:

- Information we receive from you on applications or other forms, such as your name, address, social security number, tax identification number, asset information, and income information;
- Information we receive from you through our Internet websites, such as your name, address, email address, Internet Protocol address, the website links you used to get to our websites, and your activity while using or reviewing our websites;
- Information about your transactions with or services performed by us, our affiliates, or others, such as information concerning your policy premiums, payment history, information about your home or other real property, information from the lenders and other third parties involved in such transaction, account balances, and credit card information; and
- Information we receive from consumer or other reporting agencies and publicly recorded documents.

**Disclosure of Personal Information**

We may provide your Personal Information (excluding information we receive from our consumer or other credit reporting agencies) to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Disclosures may include, without limitation, the following:

- To insurance agents, brokers, representatives, support organizations, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;
- To third-party contractors or service providers for the purpose of determining your eligibility for an insurance benefit or payment and/or providing you with services you have requested;
- To an insurance regulatory authority, or law enforcement or other governmental authority, in a civil action, in connection with a subpoena or a governmental investigation;
- To companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and/or
- To lenders, lien holders, judgment creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

We may also disclose your Personal Information to others when we believe, in good faith, that such disclosure is reasonably necessary to comply with the law or to protect the safety of our customers, employees, or property and/or to comply with a judicial proceeding, court order or legal process.

<u>Disclosure to Affiliated Companies</u> - We are permitted by law to share your name, address and facts about your transaction with other Companies, such as insurance companies, agents, and other real estate service providers to provide you with services you have requested, for marketing or product development research, or to market products or services to you. We do not, however, disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent, in conformity with applicable law, unless such disclosure is otherwise permitted by law.

<u>Disclosure to Nonaffiliated Third Parties</u> - We do not disclose Personal Information about our customers or former customers to nonaffiliated third parties, except as outlined herein or as otherwise permitted by law.

**Confidentiality and Security of Personal Information**

We restrict access to Personal Information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard Personal Information.

**Access to Personal Information/**
**Requests for Correction, Amendment, or Deletion of Personal Information**

As required by applicable law, we will afford you the right to access your Personal Information, under certain circumstances to find out to whom your Personal Information has been disclosed, and request correction or deletion of your Personal Information. However, <u>The Company's current policy is to maintain customers' Personal Information for no less than your state's required record retention requirements for the purpose of handling future coverage claims.</u>

For your protection, <u>all requests made under this section must be in writing and must include your notarized signature to establish your identity.</u> Where permitted by law, we may charge a reasonable fee to cover the costs incurred in responding to such requests. Please send requests to:

Chief Privacy Officer
The Title Company, Inc.
Suite 102, 500 Second Street South
La Crosse, WI 54601

**Changes to this Privacy Statement**

This Privacy Statement may be amended from time to time consistent with applicable privacy laws. When we amend this Privacy Statement, we will post a notice of such changes on our website. The effective date of this Privacy Statement, as stated above, indicates the last time this Privacy Statement was revised or materially changed.

# CHICAGO TITLE INSURANCE COMPANY

## OWNER'S AFFIDAVIT AS TO LIENS AND POSSESSION

1.  I am the Owner of the property (the Property) described in commitment number_____issued by Chicago Title Insurance Company.

2.  **Construction work.** *(check one box)*

    ☐  Repair or construction work **has not** been done on the Property in the past six months.

    ☐  Repair or construction work **has** been done on the Property in the past six months. The total dollar amount of the work is approximately $_____. All of the people who supplied labor or material are listed below. All lien waivers I collected from these people are stapled to this affidavit.

    **Type of work Contractor name          Dollar amount of work Date of work**

    _____
    _____
    _____
    _____

3.  **Tenants.** The following tenants and renters occupy the Property: *(check one box)*

    ☐  There are **no** tenants.

    ☐  There are tenants, but all have left the Property or **will leave** as of closing.

    ☐  One or more tenants **will stay** after this sale is closed. Their names are:

    _____
    _____
    _____
    _____

I give this affidavit to persuade CHICAGO TITLE INSURANCE COMPANY to issue its policy or policies of title insurance. I agree to indemnify Chicago Title Insurance Company against loss caused by inaccuracies or omissions in the above information of which I am aware._____

Dated this_____ day of_____     (year).

OWNER                                              Subscribed and sworn to before me this

_____     _____ day of _____, _____ (year).

_____     _____

By: _____

                                              Notary Public,_____County, Wisconsin. My .
                                              commission (expires) (is
Its: _____     permanent): _____

# GAP ENDORSEMENT

Attached to and forming a part of
Commitment of Insurance No. 115033T

Issued By
## Chicago Title Insurance Company

Notwithstanding the provisions of Paragraph 1 of Schedule B-II of the commitment, policies issued or issuable within 30 days from the effective date hereof shall not contain as exceptions matters arising subsequent to the effective date of this commitment unless:

1. The Company discloses such matters prior to the closing to the person for whom this commitment is prepared; or

2. The conveyance to the Insured is by a grantor who does not warrant title; or

3. The proposed insured or his counsel fails to notify the Company of closing at least three business days prior to the closing; or

4. The conveyance documents, in recordable form, are not made available or delivered to the Company or recorded within two business days after the closing; or

5. The seller or sellers fail to execute a personal undertaking and indemnity in favor of the Company regarding matters which may appear in the public records after the effective date of this commitment, in a form acceptable to the Company.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated: January 12, 2015

CHICAGO TITLE INSURANCE COMPANY

*Teresa Callaway*

Authorized signatory

# RECORDING GAP INDEMNITY

## Commitment No. <u>115033T</u>

WHEREAS, the Chicago Title Insurance Company, (Chicago), is about to issue its title insurance policy or policies (the Policies) to proposed insured(s) for property described in the above referenced commitment, insuring against loss by reason of defects in the title to said property (the Land);

AND, WHEREAS, Chicago has made exception for defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching between the effective date of the title insurance Commitments and the date of recording of the deed and/or mortgage to be insured ;

AND WHEREAS, Chicago has been asked to issue the Policies, and may hereafter in the ordinary course of its business issue title insurance policies or commitments in respect to the Land, or some part or interest in it (the Future Policies), removing or insuring against loss by reason of the Gap Defect(s);

NOW, THEREFORE, in consideration of the issuance of the Policies or Future Policies, the undersigned covenant(s) and agree(s) with Chicago forever to protect, defend and save Chicago harmless from and against Gap Defect(s) created, suffered or agreed to by the undersigned and except as disclosed in writing to Chicago, and any right, interest or defect growing out of the same, including all loss, costs, damages, and attorneys' fees and expenses which it may incur by reason thereof, including loss, costs, damages, fees and expenses incurred in actions brought to enforce this agreement; to defend at undersigned's own cost any and every suit, action or proceeding in which the Gap Defect(s) was created, suffered or agreed to by the undersigned and, except as disclosed in writing to Chicago, is or are asserted against the real estate; to satisfy or remove such Gap Defect(s) on written demand within thirty days; and that each and every provision herein shall extend to and be in force concerning Future Policies.

Dated this _____ day of _____, _____.

FOR CORPORATIONS                                      FOR INDIVIDUALS

Name_____

_____
(Signature)

By_____
(Signature)

_____
(Print name)

_____
Print name and title

_____
Address (new address if moving)

_____
Address (new address if moving)

_____
City                          State

_____
City            State            Zip

| SUBSTITUTE<br>Form **W-9**<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | **GIVE THIS FORM TO<br>THE REQUESTER.<br>DO NOT SEND TO IRS** |
|---|---|---|

**Please Print**

**Provide your new mailing address if applicable.**

**Line 1** Name (as shown on your income tax return)

Address (number, street, and apt or suite no)

City, State, and ZIP Code

Phone Number (with area code)

| Check Appropriate Box | Individual/<br>Sole Proprietor ☐ | Corporation ☐ | Partnership ☐ | LLC*<br>(see below) ☐ |
|---|---|---|---|---|

Business name, if different from Line 1 above

## Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN must match the name given on **Line 1** to avoid backup withholding. For individuals and single member LLC, this is your social security number (SSN). For other entities, it is your employer identification number (EIN)

Social Security Number:

☐ ☐ ☐ - ☐ ☐ - ☐ ☐ ☐ ☐

Employer Identification Number:

☐ ☐ - ☐ ☐ ☐ ☐ ☐ ☐ ☐

## Certification

Under penalties of perjury, I certify that:
1. The number shown on this form is my correct taxpayer identification number.
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person.
4. **I agree to reimburse the requester if a $50.00 penalty is imposed by the IRS for incorrect information.**

**\*If this is a LLC,** how many Members? _____

Social Security Number:

☐ ☐ ☐ - ☐ ☐ - ☐ ☐ ☐ ☐

Managing Member: _____

| **Signature of<br>U.S. Person** ↖ | **Date** ↖ |
|---|---|

| **Return to<br>Requester:** | The Title Company, Inc.<br>500 Second Street S., Suite 102<br>PO Box 578<br>La Crosse, WI 54602-0578 | Phone:  608-791-2000<br>FAX:  608-791-2015<br>Email:  form@titleco.com |
|---|---|---|

## FOR REQUESTER USE ONLY

Address of Property: _120 Clyde St. E_<br>City, State, ZIP: _Holmen, WI 54636_<br>File Number: _115033T_

Date of Closing: _____<br>Gross Proceeds: _____<br>Buyer's part of real estate tax: _____

UE-172 (REV. 01/07)
1099 Certification for No Report Information (1099cer)(08-04)

# CERTIFICATION FOR NO INFORMATION REPORTING
# ON THE SALE OR EXCHANGE OF A PRINCIPAL RESIDENCE

File No.: <u>115033T</u>

This form may be completed by the seller of a principal residence. This information is necessary to determine whether the sale or exchange should be reported to the seller, and to the Internal Revenue Service on Form 1099-S, Proceeds from Real Estate Transactions. If the seller properly completes parts I and III, and make a 'true' response to assurances (1) through (6) in Part II (or a 'not applicable' response to assurance (6)), no information reporting to the seller or to the Service will be required for that seller. The term "seller" includes each owner of the residence that is sold or exchanged. Thus, if a residence has more than one owner, a real estate reporting person must either obtain a certification from each owner (whether married or not) or file an information return and furnish a payee statement for any owner that does not make the certifications.

## Part I. Seller Information

1.    Name:

2.    Address or legal description (including city, state and zip code) of residence being sold or exchanged:

3.    Taxpayer Identification Number (TIN):

## Part II. Seller Assurances

Check 'true' or 'false' for assurances (1) through (5), and 'true', 'false' or 'not applicable' for assurance (6)

| True | False | |
|------|-------|---|
| ☐ | ☐ | (1) I owned and used the residence as my principal residence for periods aggregating 2 years or more during the 5-year period ending on the date of the sale or exchange of the residence. |
| ☐ | ☐ | (2) I have not sold or exchanged another principal residence during the 2-year period ending on the date of the sale or exchange on the residence. |
| ☐ | ☐ | (3) I (or my spouse or former spouse, if I was married at any time during the period beginning after May 6, 1997, and ending today) have not used any portion of the residence for business or rental purposes after May 6, 1997. |
| ☐ | ☐ | (4) At least one of the following three statements applies: |

The sale or exchange is of the entire residence for $250,000 or less.
**OR**
I am married, the sale or exchange is of the entire residence for $500,000 or less, and the gain on the sale or exchange of the entire residence is $250,000 or less.
**OR**
I am married, the sale or exchange is of the entire residence for $500,000 or less, and
a. I intend to file a joint return for the year of the sale or exchange,
b. My spouse also used the residence as his or her principal residence for periods aggregating 2 years or more during the 5-year period ending on the date of the sale or exchange of the residence, and,
c. My spouse also has not sold or exchanged another principal residence during the 2-year period ending on the date of the sale or exchange of the principal residence.

| True | False | |
|------|-------|---|
| ☐ | ☐ | (5) During the 5-year period ending on the date of the sale or exchange of the residence, I did not acquire the residence in an exchange to which Section 1031 of the Internal Revenue Code applied. |

| True | False | Not Applicable | |
|------|-------|----------------|---|
| ☐ | ☐ | ☐ | (6) If my basis in the residence is determined by reference to the basis in the hands of a person who acquired the residence in an exchange in which Section 1031 of the Internal Revenue Code applied, the exchange to which Section 1031 applied occurred more than 5 years prior to the date I sold or exchanged the residence. |

## Part III. Seller Certification

Under penalties of perjury, I/we certify that all the above information is true as of the end of the day of the sale or exchange.

_____          _____          _____
Signature of Seller                                      Date                        NEW Address

_____          _____          _____
Phone Number                                                                          City                                    State    Zip

Note: SIGNATURE OF SPOUSE IS REQUIRED ON SEPARATE FORM

File No: **115033T**

**SCHEDULE B - SECTION II**
Exceptions

**The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:**

1. *Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed Insured acquires for value of record the estate or interest mortgage thereon covered by this Commitment.*

2. *Special taxes or assessments, if any, payable with taxes levied or to be levied for the current and subsequent years.*

3. *Liens, hook-up charges or fees, deferred charges, reserve capacity assessments, impact fees, or other charges or fees due and payable on the development or improvement of the land, whether assessed or charged before or after the Date of Policy. The company assures the priority of the lien of the insured mortgage over any such lien, charge or fee.*

4. *Any lien or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.*

5. *Rights or claims of parties in possession not shown by the public records.*

6. *Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.*

7. *Easements or claims of easements not shown by the public records.*

8. *Any claim of adverse possession or prescriptive easement.*

9. *General and special taxes for the year 2014.*



10. *Easement, granted by Trygve G. Mathison and Karan K. Mathison to General Telephone of Wisconsin Company, its successors and assigns by an instrument dated November 1, 1969 and recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on November 18, 1969 in Volume 464 of Records, page 537 as Document No. 798647. A copy of which is attached hereto and made a part hereof by reference.*

   *Assignment and Assumption of Recorded Easements, Licenses and Right of Way Agreements dated September 29, 2000 and recorded in said Register's office on October 18, 2005 as Document No. 1434624. Partial copies of which are attached hereto and made a part hereof by reference.*

11. *Easement, granted by Trygve Mathison and Karen Mathison to General Telephone Company of Wisconsin, its successors and assigns by an instrument dated April 28, 1976 and recorded in said Register's Office on May 11, 1976 in Volume 574 of Records, page 322 as Document No. 857162. A copy of which is attached hereto and made a part hereof by reference.*

   *Assignment and Assumption of Recorded Easements, Licenses and Right of Way Agreements dated September 29, 2000 and recorded in said Register's office on October 18, 2005 as Document No.*

*1434624. Partial copies of which are attached hereto and made a part hereof by reference.*

12. *Security Agreement, according to the terms and provisions thereof, from Steven T. Rapraeger and Kathleen J. Rapraeger to WI Coulee Region Community Action Program, Inc., to extend credit and any other amount payable under the terms thereof, recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on March 30, 2000 in Volume 1370 of Records, page 944 as Document No. 1248321.*

    *By an instrument executed by Coulee Cap, Inc., dated September 20, 2006 and recorded in said Register's Office on November 29, 2006 as Document No. 1463474, it is agreed that the lien of the mortgage recorded as Document No. 1407958 described below is made paramount and prior in lien to mortgage recorded as Document No. 1248321.*

13. *Mortgage, according to the terms and provisions thereof, from Steven T. Rapraeger and Kathleen J. Rapraeger, husband and wife to Bank of Galesville, to secure the originally stated indebtedness of $70,000.00 and any other amount payable under the terms thereof, dated October 29, 2004 and recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on November 9, 2004 as Document No. 1407958.*

14. *An action to foreclose mortgage, according to the terms and provisions thereof from Steven Rapraeger and Kathleen Rapraeger, husband and wife to Associated Bank, N.A., to secure the originally stated indebtedness of $35,800.00, and any other amount payable under the terms thereof, dated January 18, 2006 and recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on February 15, 2006 as Document No. 1442754, with Lis Pendens, Case No. 2010CV001013 filed with the Register of Deeds on October 21, 2010 as Document No. 1561049, and is still pending and should be commenced and duly prosecuted to judgment, sale and confirmation of sale.*

15. *Mortgage, according to the terms and provisions thereof, from Steven T. Rapraeger and Kathleen J. Rapraeger to GMAC Mortgage Corporation DBA, to secure the originally stated indebtedness of $35,500.00 and any other amount payable under the terms thereof, dated June 30, 2006 and recorded in the Office of the Register of Deeds for La Crosse County, Wisconsin on August 2, 2006 as Document No. 1455199, in which mortgage was subsequently assigned by Mortgage Electronic Registration Systems, Inc., as designated nominee for GMAC Mortgage Corporation DBA, beneficiary of the security instrument, its successors and assigns, to The Bank of New York Mellon Trust Company, N.A., as Trustee for GMACM Home Equity Loan Trust 2006-HE3, its successors and assigns, by an instrument dated June 23, 2014 and recorded in said Register's Office on June 26, 2014, as Document No. 1641304.*

    *"This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns,) as beneficiary. MERS is organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888)679-MERS. GMAC Mortgage Corporation DBA ("Lender") is organized and existing under the laws of Commonwealth of Pennsylvania and has an address of 3200 Park Center Dr. Suite 150, Costa Mesa, CA 92626.*

    *MIN #100037506561177867.*

16. *Unpaid 2011 real estate taxes, in the sum of $486.75, exclusive of fee and interest.*

17. *Unpaid 2012 real estate taxes, in the sum of $4,687.67, exclusive of fee and interest.*

18. *Unpaid 2013 real estate taxes, in the sum of $4,054.87, exclusive of fee and interest.*

19. *Taxes and assessments, general or special, for the year 2014 unless a tax receipt showing full payment is presented.*

20. *There are no special assessments now a lien on the property. NOTE: The covered premises are subject to water, sewer and storm water utility charges. The exact amount of charges should be obtained from the City of LaCrosse immediately prior to settlement.*

*2014 TAX DATA: (Tax Parcel No. 14-616-000) General Tax $3,345.25 is not yet due and payable. (Lottery Credit $124.84) (First Dollar Credit $73.77)*

*It is to be understood that the owner's policy, when issued will contain as an additional exception, the mortgage called for on Schedule B - Section 1 of this commitment.*

*NOTE: Deeds recorded as Document numbers 1026776, 1636680, 1637136 and 11649607 are attached.*

| | |
|---|---|
| In Re: | In Bankruptcy No: |
| **STEVEN T. RAPRAEGER**<br>**and KATHLEEN J. RAPRAEGER** | |
| **Debtors/Debtor in Possession** | **Case No: 13-10869(CJF)** |

### NOTICE OF MOTION TO SELL CERTAIN REAL ESTATE FREE AND CLEAR OF ALL LIENS PURSUANT TO BANKRUPTCY SECTION 363 WITH THE PROCEEDS ATTACHING TO THE LIENS IN THE ORDER OF PRIORITY ON THE PROPERTY

**PLEASE TAKE NOTICE,** that the debtors, Steven T. Rapraeger and Kathleen J. Rapraeger, by their attorneys PITTMAN & PITTMAN LAW OFFICES, LLC by Galen W. Pittman, has filed a Motion to Sell Certain Real Estate Free and Clear of All Liens. A copy of said Motion is attached thereto.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to approve said motion, or if you want the Court to consider your views on the motion, then on or before **February 9, 2015** you or your attorney must file with the Court, in writing, your position in said matter and request a hearing and file your original document with the *United States Bankruptcy Court, for the Western District of Wisconsin, 500 South Barstow, Eau Claire, WI 54701,* and a copy to *Attorney Galen W. Pittman, PITTMAN & PITTMAN LAW OFFICES, LLC, 300 North 2nd St., Ste. 210, Post Office Box 668, La Crosse, Wisconsin 54602-0668.* If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought by the motion and may enter an order granting that relief.

Dated this _30_ day of January, 2015, at La Crosse, Wisconsin.

PITTMAN & PITTMAN LAW OFFICES, LLC

**By:** s/Galen W. Pittman

Galen W. Pittman
Attorney No: 1010058
Attorney for Debtors
300 North 2nd St., Ste. 210
Post Office Box 668
La Crosse, WI 54602-0668
(608) 784-0841

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

In Re:                                    In Bankruptcy No:

**STEVEN T. RAPRAEGER**
**and KATHLEEN J. RAPRAEGER**

       **Debtors/Debtor in Possession**    Case No: 13-10869(CJF)

## AFFIDAVIT OF SERVICE BY MAIL

| STATE OF WISCONSIN | ) |
|---|---|
| | ) SS |
| COUNTY OF LA CROSSE | ) |

The undersigned being first duly sworn states that a true copy of ***Motion to Sell Certain Real Estate, Notice and Proposed Order*** was served upon the individuals on attached list either by electronic filing or by enclosing the same in an envelope postpaid for first class handling which bore the sender's name and return address and addressed to each such individual at their respective post office addresses and deposited in a U.S. Post Office depository in La Crosse, Wisconsin on January 30, 2015.

s/Wanda F. Nickelotti
**Wanda F. Nickelotti**

Subscribed and sworn to before me
this 30 day of January, 2015.

s/Galen W. Pittman
**Galen W. Pittman, Notary Public**
**My Commission is Permanent.**

INTERNAL REVENUE SERVICE
Patricia Patton
Stop 5700
30 East 7th Street, Ste. 1222
St. Paul, MN 55101

Wisconsin Department of Revenue
Post Office Box 8902
Madison, WI 53708

U. S. TRUSTEE OFFICE
780 Regent Street
Suite 304
Madison, WI 53715

Associated Bank
1305 Main Street
Stevens Point, WI 54481

Bank of Galesville
Post Office Box 429
Galesville, WI 54630

Barclay Card
Card Services
Box 13337
Philadelphia, PA 19101-3337

Barclays Bank Delaware
Post Office Box 8803
Wilmington, DE 19899

Capital One Bank (USA), N.A.
Post Office Box 6492
Carol Stream, IL 60197-64925

Capital One Bank USA NA
Post Office Box 30281
Salt Lake City, UT 84130

Community Credit Union
Post Office Box 39
La Crosse, WI 54602-0039

Coulee Action
201 Melby Street
Westby, WI 54667

Dennis L. Russell
Fox Hollow, LLC
990 Linden Drive
Holmen, WI 54636

Encore, Inc.
6976 Professional Parkway East
Sarasota, FL 34240

Green Tree
Box 6172
Rapid City, SD 57709

Gundersen Lutheran
1900 South Avenue
La Crosse, WI 54601-5467

Gundersen Lutheran Clinic
c/o Tri-State Adjustments Inc.
Post Office Box 3219
La Crosse, WI 54602-3219

La Crosse Co. Human Services
Attn: Fiscal Unit-Billing
300 North 4th Street
La Crosse, WI 54601-3228

Marine Credit Union
Post Office Box 309
Onalaska, WI 54650

Pos-T-Vac
4811 Technology Drive
Martinez, GA 30907

Stuart Allan & Assoc.
5447 E. 5th Street, Ste. 110
Tucson, AZ 85711-2345

Tri-State Adjustments Inc.
Post Office Box 3219
La Crosse, WI 54602-3219

Steven and Kathleen Rapraeger
120 East Clyde Street
Holmen, WI 54636